STATE, *ex rel.* W. R. CLARK PRINTING AND BINDING CO., *et al.,* v. J. M. LEE, as Comptroller.

158 So. 461.

Opinion Filed December 31, 1934.

*B. K. Roberts, A. L. Porter* and *H. H. Wells,* for Relators;

*Cary D. Landis, Attorney General,* and *Robert J. Pleus,* Assistant, for Respondent.

PER CURIAM.—Chapter 14824, Acts of 1931, provides that all public printing shall be divided into two classes. As to Class A it is made the duty of the Board of Commissioners of State Institutions to call for bids and let contracts therefor to printers whose manufacturing plants are located within the State of Florida. As to Class B it is provided that no general contract shall be let to cover the class of printing designated as Class B, which latter class embraces all of the printing required by the State of Florida not included in Class A. The latter is the printing required to be done for the legislative department and the publication of the Supreme Court Reports. As to Class B it is provided that each (printing) job coming under the classification shall be let separately by the department to which it belongs "to the lowest responsible bidder who shall manufacture the same within the State."

Chapter 14824 is an amendment of Section 1981 C. G. L., 1305 R. G. S., and is in *pari materia* with Sections 1978, 1979, 1980, 1982 C. G. L., 1302, 1303, 1304, 1306, R. G. S., the other statutory provisions on the subject of public printing.

The requirement of the Florida statutes that all public

printing shall be so awarded that it will be done within the State of Florida within printing plants located within the State, carries with it the necessary implication that the particular service essential to the execution of a particular "job" shall be reasonably procurable in the State of Florida at the time the job or contract for it is to be let—the purpose of the law being to favor with the State's printing business those printing plants and shops doing business in Florida, which may be capable and desirous of fulfilling the particular printing requirements of State Departments and other State agencies having need for the procurement of public printing for their use.

Under the foregoing statutes all of the public printing of the State of Florida must, where there are Florida concerns prepared to submit competitive bids for doing it, be let out to and executed in plants located within the State of Florida and any arrangement or device, directly or indirectly entered into, for having it done otherwise, is void and of no effect because prohibited by statute.

But the statutes hereinbefore referred to are applicable only to what may be properly classified as public printing. Section 1990 C. G. L., 1311 R. G. S., requiring the *State Comptroller* to purchase from parties in Florida manufacturing the same, all the blank books, stationery and paper, etc., to be used in the different departments, provided the same can be bought on as fair and reasonable terms as elsewhere, taking quality into consideration, cannot be judicially extended to cover purchases of the specified materials when authorized by statute to be made otherwise than through the Comptroller's office, although the policy of that statute to favor Florida concerns with Florida business may consistently be adopted and followed by other departments in keeping with the spirit of Florida law as thereby made evident.

The alternative writ of mandamus in this case, to which

a motion to quash is directed by the respondent Comptroller, must, for the purposes of the motion, be taken as true.

The writ alleges, among other things, as follows:

"That W. R. Clark Printing and Binding Company, Inc., is engaged in the manufacturing and selling of office supplies and is sole owner and sole producer of a class of office supplies generally known and identified as 'Zip-Out' Carbon Stripper. 'Zip-Out' is produced and manufactured in the following form and manner to-wit:

"(a) A series of sheets of paper are cemented together and likewise a comparative number of sheets of carbon paper of the same size and form are properly placed between the sheets of document paper and likewise attached by cement. The process is that by inserting the completed form in a typewriter, that same will remain intact until the typing is finished and then because of perforations in the paper the carbon may in an instant be detached from the sheets leaving all of the typing on the copy in a regular and properly spaced manner. In addition to producing a very neat and properly spaced carbon copy there is considerable saving of time on the part of the typist by virtue of the stationery and carbon having been properly and previously cemented together; all of which will more fully appear from two sheets of 'Zip-Out' products hereto attached and marked Exhibit 'A' and 'B' respectively and made a part hereof by reference.

"That by virtue of being the owner of the patent rights of 'Zip-Out' products, the relator, W. R. Clark Printing and Binding Company, Inc., is entitled to a royalty for the use thereof. That the said W. R. Clark Printing and Binding Company, Inc., is likewise entitled to payment for the stationery, carbon and cement used therein in addition to the royalty and that the said W. R. Clark Printing and Binding Company, Inc., has not authorized or licensed any

other company or companies to join in the manufacture of 'Zip-Out' products.

"That as an inducement to sell 'Zip-Out' products as aforesaid and to therefore sell the cement, carbon papers and stationery and to collect thereon and therefrom a reasonable royalty, the said W. R. Clark Printing and Binding Company, Inc., frequently make up printed forms leaving proper spacing for filling in desired information by a typist, but that said printing is done primarily for the purpose of introducing 'Zip-Out' products to the public generally and as an inducement to buy 'Zip-Out' products as aforesaid and not in pursuance of any contract to do any binding, or printing.

"That George H. Wilder is acting Motor Vehicle Commissioner of the State of Florida and under the laws of the State of Florida, and that L. B. Bowman is Chief Clerk thereof and that in their respective official capacities they are authorized to purchase office supplies to be used and consumed by the office of the Motor Vehicle Commissioner of the State of Florida.

"That on or about July 9, A. D. 1934, the said George H. Wilder in his official capacity as aforesaid, purchased from relator, W. R. Clark Printing and Binding Company, Inc., Ten Thousand (10,000) 'Sets four part Automobile Registration Blanks Size 4 x 6—collated with carbon in Unit Pad Sets perforated for Zip-Out carbon stripper Clark Invention Process patent pending, at a cost of Four Dollars and Twenty Cents ($4.20) per thousand and that said products, as hereinbefore specifically set out, are Zip-Out products.

"That the particular item purchased by the said Motor Vehicle Commissioner of the State of Florida is used in the securing of information from applicants for the registering of automobiles by the said Motor Vehicle Commis-

sioner of the State of Florida and that same consists of four sheets of stationery with three sheets of carbon paper inserted in between, all of which is cemented together, constituting a 'ZIP-OUT' Carbon Stripper protected by patent as aforesaid; all of which will more fully appear from a copy of said item hereto attached and marked Exhibit 'A' and made a part of this petition by reference.

"That said 'ZIP-OUT' products in pursuance of said order were actually delivered to the said Motor Vehicle Commissioner of the State of Florida and was by him accepted without criticism or complaint. Your relators are advised and believe and therefore, allege and represent that said 'ZIP-OUT' products have been actually utilized and practically consumed by the said Motor Vehicle Commissioner of the State of Florida.

"That on July 9, A. D. 1934, your relator, W. R. Clark Printing and Binding Company, Inc., presented its bill for said 'ZIP-OUT' products, the original of which is hereto attached and marked Exhibit 'C' and made a part hereof by reference.

"That on July 11, A. D. 1934, the said George H. Wilder, as acting Motor Vehicle Commissioner of the State of Florida, made his requisition to the Comptroller of the State of Florida, requesting that the said bill in the amount of Forty-two ($42.00) Dollars, payable to the relator, W. R. Clark Printing and Binding Company, Inc., be paid.

"That said requisition was approved by the said George H. Wilder, and likewise approved by the said L. B. Bowman, as Chief Clerk, and was transmitted to the Respondent, the Honorable J. M. Lee as Comptroller of the State of Florida, the original of which is hereto attached and marked Exhibit 'D' and made a part hereof by reference.

"That on or about July 2, A. D. 1934, Honorable Cary D. Landis, Attorney General of the State of Florida, advised

Honorable George H. Wilder, as acting Motor Vehicle Commissioner of the State of Florida, from all practical intents and purposes that a bill presented by 'ZIP-OUT' products as aforesaid should be paid; 'if the cost of the printing of this 'ZIP-OUT' carbon stripper is merely an incidental part of the total cost of the form,' the exact language of which will more fully appear from a copy of the opinion of the said Attorney General, hereto attached and marked Exhibit 'E' and made a part hereof by reference.

"That notwithstanding all of the foregoing, the said Respondent, J. M. Lee, as Comptroller of the State of Florida, on July 12, A. D. 1934, refused to pay said bill contending that said bill was contracted in violation of the provisions of Chapter 14824, Acts of A. D. 1931, which prohibits the contracting of State printing, where such printing is actually manufactured out of the territorial limits of the State of Florida; all of which will more fully appear from a copy of the communication of the said Respondent, hereto attached and marked Exhibit 'F' and made a part hereof by reference and that the said Respondent still persists in his refusal to pay said bill.

"Your Relator further represents unto this Honorable Court that the sale of the merchandise herein referred to was not a contract for printing in violation of the laws of the State of Florida, but that same was a purchase of office supplies including stationery, carbon paper, and cement, together with an insignificant amount of printing used as an inducement to effect the sale of said merchandise as aforesaid. That the cost of printing is merely an incidental part of the total cost of the form and as a matter of fact from the records of the W. R. Clark Printing and Binding Company, Inc., represents less than eleven per cent (11%) of the aggregate selling price of the form.

"By virtue of all the foregoing, your relator respectfully

represents that it became the duty and still is the duty of the said Respondent to pay said bill in accordance with the requisition filed by the Motor Vehicle Commissioner of the State of Florida, and that it is the official duty of the said Respondent to immediately pay said bill."

If, as suggested dehors the alternative writ, the State Motor Vehicle Commissioner was in need of having done certain printing essential for the requirements of his office, it was his duty to seek the procurement of same as provided for in Chapter 14824, Acts of 1931, by taking bids for supplying same from the lowest responsible bidder who would manufacture same within the State of Florida. But if there were, at the time within the State of Florida, no such competing Florida firms who were prepared to furnish to the State Motor Vehicle Commissioner required blanks or forms (though printed) of the particular design or special type, kind or character specified by him, such as the type of blank described in that part of the alternative writ hereinbefore quoted, then the State Motor Vehicle Commissioner committed no violation of the statute in making a purchase of same elsewhere, or in having the work done by a plant or firm not carrying on its work within the State of Florida.

The statutory requirements of Chapter 14824, *supra,* are (1) letting of the work pursuant to competitive bids and (2) letting the work to bidders who operate their plants and will contract to execute the work let, within the State of Florida, and will, of course, furnish the work duly executed according to the officer's or department's requirements as set forth in his or its specifications for the job. Such statutory requirements necessarily imply that conditions shall exist in the State under which the particular requirements for a particular job can be fulfilled, because no purpose is evidenced by the statute to handicap or restrain officers and departments in the kind of printing that they may have done.

The only limitation is that if the work can be procured to be done within the State of Florida by one of two or more competing Florida firms having plants in this State, and prepared to execute the work in this State, that then the class of persons who are eligible to become bidders shall be restricted to Florida concerns and Florida printing establishments only, and that no such work shall be let to any other class of bidders, nor any funds disbursed to the latter class therefor.

Section 23 of Article IV of the State Constitution vesting the Comptroller with power to examine, audit, adjust and settle accounts of State officers confers upon the Comptroller the right and imposes upon him the duty to see to it that all disbursements of public moneys are authorized by a legal appropriation and that the payment of a particular item violates no positive prohibition against payment, expressly or impliedly forbidden by law. That Section and Article vests the Comptroller with no supervisory authority to veto or disallow items of expenditure for which a lawful appropriation has been made by the Legislature and the payment of which, as approved by the responsible officer or agency incurring the obligation under statutory power so to do, violates no provision of law.

Chapter 11901, Acts of 1927 (Sections 1327 to 1334 C. G. L.), creating the office of State Motor Vehicle Commissioner authorized the commissioner to incur expenditures for the purposes of his official administration of the office and provides that responsibility for the acts of said Motor Vehicle Commissioner shall rest upon said Motor Vehicle Commissioner under his official oath of office and official bond—an accounting to be rendered to the Comptroller quarterly.

It appears from the alternative writ of mandamus that the State Motor Vehicle Commissioner has duly approved

the account here in controversy as being just, due and properly incurred as an expense chargeable to the expenses of the office of State Motor Vehicle Commissioner under authority of law. This *prima facie* entitled the relator to have the Comptroller draw a warrant to pay such account unless the Comptroller can justify his refusal to act by alleging and proving in avoidance of the command of the writ that after the Comptroller had examined and audited said account just cause for refusing payment of same as presented had been found and determined by the Comptroller to exist as a basis for his refusal to act—the burden of bringing forward the cause of rejection being on the Comptroller when the claim is *prima facie* legal.

Motion to quash denied with leave to answer within ten days in default of which peremptory writ will stand awarded.

DAVIS, C. J., and WHITFIELD, TERRELL, BROWN and BUFORD, J. J., concur.