**STATE OF FLORIDA,** ex rel. **ARTHUR KUDNER, INC.,** a foreign corporation, and **FLORIDA CITRUS COMMIS-SION,** a statutory corporation, v. **J. M. LEE,** as State Comptroller.

7 So. (2nd) 110                                                                    En Banc
February 13, 1942                        Rehearing Denied March 27, 1942

John W. Bull, for relator; Arthur Kudner, Inc., Thomas W. Bryant, for Relator Florida Citrus Commission, E. Snow Martin, Associate Counsel, Relators.

Dickenson & Dickenson, J. P. Marchant and Lewis H. Tribble, for respondent.

Wendell C. Heaton, for Florida State Typographical Conference, Archie Clement for Florida Country Weekly Newspapers, J. Tom Watson, as Amicus Curiae.

CHAPMAN, J.:

This is a case of original jurisdiction. The petition for alternative writ of mandamus alleged, *inter alia,* that under the several provisions of Chapter 16854, Laws of Florida, Acts of 1935, as amended by Chapter 17775, Laws of Florida, Acts of 1937, as amended by Chapter 20449, Laws of Florida, Acts of 1941, the Florida Citrus Commission was a body corporate and authorized to contract and be contracted with; that pursuant to Chapter 17780, Laws of Florida, Acts of 1937, known as the Grapefruit Advertising Law; and under the provisions of Chapter 16856, Laws of Florida, Acts of 1935, as amended by Chapter 17781, Laws of Florida, Acts of 1937, known as the Orange Advertising Law; and under the provisions of Chapter 16858,, Laws of Florida, Acts of 1935, as amended by Chapter 17782, Laws of Florida, Acts of 1937, known as the Tangerine Advertising Law, the Florida Citrus Commission was authorized and directed to

conduct an advertising and publicity campaign to pro-
mote the sale of citrus fruit grown in Florida and
increase the consumption thereof.

Pursuant to law the Florida Citrus Commission, on
June 8, 1938, contracted with Arthur Kudner, Inc., an
advertising agency, for sum stated and period of time
named, to advertise Florida grown grapefruit, oranges
and tangerines. The contract was by the parties an-
nually renewed until and inclusive of the year 1940.
Kudner thereby agreed to act in an advisory capacity
to the Florida Citrus Commission, prepare copies for
publication, furnish art work and plates, perform nec-
essary mechanical operations, suggest media . . .
Kudner further agreed to promote the best possible
terms of advertising with all magazines, newspapers,
trade papers, and obtain bill boards, card space, and
radio broadcast time. . . .

On August 20, 1940, the Citrus Commission con-
tracted with Arthur Kudner, Inc., for the lithograph-
ing, preparation and printing of certain advertising
material in booklet form to be distributed through
Arthur Kudner, Inc., its advertising agency. Arthur
Kudner, Inc., procured the manufacture in New York
City of 500,000 copies of the booklet entitled: "For
the Joy of Living" by the National Process Company
of New York City, at a total cost of $10,796.67, which
sum was approved by the Florida Citrus Commission,
and a requisition therefor made by the Citrus Com-
mission on the respondent, Honorable J. M. Lee, Comp-
troller, for the payment of said sum, and that it be
paid by the respondent and charged to: (a) Orange
Advertising Fund; (b) Grapefruit Advertising Fund;
(c) Tangerine Advertising Fund. The alternative writ

commands the respondent to pay the aforesaid sum or show cause why the same should not be paid.

The answer of the respondent Lee to the alternative writ sets forth several reasons for the non payment of the item of $10,796.67, being the total cost of the booklet entitled "For the Joy of Living" manufactured by the National Process Company of New York City under the supervision of Arthur Kudner, Inc., advertising agency of the Florida Citrus Commission, and substantially are viz.: (1) that Chapter 14824, Acts of 1931, classifies the booklet "For the Joy of Living" as printing and is required by the provisions of said Act to be manufactured within the State of Florida; (2) that Chapter 14824, supra, by operation of law became a part of the several provisions of the contract for said printing manufactured beyond the confines of the State of Florida and in the City of New York; (3) that the several Acts creating the Florida Citrus Commission and prescribing its charter do not authorize the contract for the manufacture of the booklets; (4) that the several Acts creating the Florida Citrus Commission and prescribing its duties have not altered, amended, repealed or affected the provisions of Chapter 14824, *supra;* (5) that it was the lawful duty of the Citrus Commission under Chapter 14824, *supra,* as a department of the State of Florida, to advertise for bids for the manufacture of the booklet entitled "For the Joy of Living," and to have awarded the contract to the lowest responsible bidder to be manufactured in Florida; (6) that the contract for said work was not let by the Citrus Commission, but was let by its advertising agency and wholly unauthorized; (7) that the respondent Lee, in October, 1940, admonished the Citrus Commission prior to the letting of the con-

tract for the manufacture of "For the Joy of Living" during December, 1940, that all public printing of the State of Florida, where there are Florida concerns prepared to submit bids, must be let to Florida printing plants; (8) that the Florida Citrus Commission could not legally authorize its agency, Arthur Kudner, Inc., to let a contract with the New York concern for the manufacture of the 500,000 booklets; (9) that Section 23 of Article IV of the Florida Constitution makes it the duty of the Comptroller "to examine, audit, adjust, and settle the accounts of all officers of Florida and perform such other duties as may be prescribed by law." The costs for the manufacture of "For the Joy of Living" were for printing regulated by Chapter 14824, *supra*.

The relators filed a motion to strike designated portions of the respondent's return or answer to the alternative writ and a motion for a peremptory writ, notwithstanding the said answer or return. It is established law that a motion to strike an answer or return to an alternative writ of mandamus, in many respects, is like a demurrer to a declaration, in that it admits as true all matters of fact as are sufficiently pleaded, but challenges the legal sufficiency of the allegations to warrant the relief sought. See State ex rel. Stringer v. Lee, 147 Fla. 37, 2 So. (2nd) 127, and authorities cited. Likewise the legal sufficiency of a return to an alternative writ can or may be determined by the court on a motion for a peremptory writ, and in so doing the question presented is whether or not the allegations of the challenged return or answer are legally sufficient to preclude the issuance of the writ. See State ex rel. Harrington v. City of Pompano, 136 Fla. 730, 188 So. 610; State ex rel.

Carson v. Bateman, 131 Fla. 625, 180 So. 22; Florida Military Academy, Inc., v. State ex rel. Moyer, 127 Fla. 781, 174 So. 3; State ex rel. Enby v. Wood, 140 Fla. 185, 191 So. 769; State ex rel. Campbell v. Sloan, 135 Fla. 179, 184 So. 781; State ex rel Peacock v. Latham, 125 Fla. 69, 169 So. 597; State ex rel. Waldron v. Wilkinson, 117 Fla. 463, 158 So. 703.

Several questions are posed by counsel for the respective parties for a decision by this Court, but one of the essential questions here presented for adjudication is: Are the booklets ordered by the Florida Citrus Commission entitled "For the Joy of Living," and manufactured by the National Process Company in New York City for distribution as advertising media to the consuming public by the Florida Citrus Commission, or its advertising agency, for the purpose of promoting the consumption and sale of Florida grown citrus fruit, public printing and regulated by Chapter 14824, Acts of 1931, Laws of Florida, and does it therefore become the legal duty of the Comptroller to refuse to pay to the relator the cost thereof in the total sum of $10,796.67 on the requisition of the Florida Citrus Commission to be charged by the Treasurer against the grapefruit, orange, and tangerine accounts?

The booklet entitled "For the Joy of Living," identified as relator's Exhibit "D" under the pleadings, and the applicable law, must for the purpose of a ruling on the motion to strike the return and for a peremptory writ, be considered as printing matter as differentiated from lithograph.

Section 1980 C.G.L. provides that all public printing necessary for the operation of the State government and its several departments or agencies shall be manu-

factured or prepared by printing concerns or establishments doing business within the State of Florida. Section 1981 C.G.L., as amended by Chapter 14828, Acts of 1931, divides all public printing into Classes A and B. Class A embraces public printing for the legislative department and all printing required for the Supreme Court, while Class B embraces all the printing required by the State of Florida not embraced in Class A. If the booklets here involved can or may be classified as public printing required for the use of the State of Florida, it will fall within the B classification.

The legal mechanics to be observed by departments, State agencies, and officials in the letting of a contract for public printing and are set forth in the case of State ex rel. Clark Printing & Binding Co. v. Lee, 117 Fla. 779, 158 So. 461, viz.:

"The statutory requirements of Chapter 14824, *supra,* are (1) letting of the work pursuant to competitive bids and (2) letting the work to bidders who operate their plants and will contract to execute the work let, within the State of Florida, and will, of course, furnish the work duly executed according to the officer's or department's requirements as set forth in his or its specifications for the job. Such statutory requirements necessary imply that conditions shall exist in the State under which the particular requirements for a particular job can be fulfilled, because no purpose is evidenced by the statute to handicap or restrain officers and departments in the kind of printing that they may have done. The only limitation is that if the work can be procured to be done within the State of Florida by one of two or more competing Florida firms having plants in this State, and pre-

pared to execute the work in this State, that then the class of persons who are eligible to become bidders shall be restricted to Florida concerns and Florida printing establishments only, and that no such work shall be let to any other class of bidders, nor any funds disbursed to the latter class therefor.

"Section 23 of Article IV of the State Constitution vesting the Comptroller power to examine, audit, adjust, and settle accounts of State officers confers upon the Comptroller the right and imposes upon him the duty to see to it that all disbursements of public moneys are authorized by a legal appropriation and that the payment of a particular item violates no positive prohibition against payment, expressly or impliedly forbidden by law. That section and article vests the Comptroller with no such supervisory authority to veto or disallow items of expenditure for which a lawful appropriation has been made by the Legislature and the payment of which, as approved by the responsible officer or agency incurring the obligation under statutory power so to do, violates no provision of law."

Section 3 of Chapter 16854, Acts of 1935, Laws of Florida, created and established a State Citrus Commission and designated it as the Florida Citrus Commission. The legal qualifications required for appointment as a member of the Florida Citrus Commission were that such member at the time of appointment was a citizen and resident of Florida and for five years prior to appointment must have been actively engaged in growing and shipping citrus fruit and the major sources of income of the appointee must have come from his activities in growing and shipping citrus fruit. The length of the term of office of mem-

bership on the Florida Citrus Commission by the Act was fixed at two years, and then until his successor was appointed and qualified. The appointment to membership on the Commission by the Act is vested in the Governor of the State of Florida. Commissions issue to members of the Citrus Commission, like other State officials, bearing the signatures of the Governor and Secretary of State. The citrus growers by petition may recommend to the Governor for his consideration and appointment qualified persons to serve on the Commission. Each member of the Commission is required to take and subscribe to the oath provided for by Section 2 of Article XVI of the Constitution of Florida, viz.:

"Section 2. Each and every officer of this State, including the members of the Legislature, shall before entering upon the discharge of his official duties take the following oath of office: I do solemnly swear (or affirm) that I will support, protect, and defend the Constitution and Government of the United States and of the State of Florida; that I am duly qualified to hold office under the Constitution of the State, and that I will well and faithfully perform the duties of................. on which I am now about to enter. So help me God."

The Act fixes the amount of compensation to be received by each member of the Commission. Personal expenses and mileage of each Commissioner while attending the meetings of the Commission are the rate allowed by law to "State Employees" for each mile traveled. Various statutory duties of stabilization, protection and the promotion of the general welfare of the citrus industry of Florida are vested in the Florida Citrus Commission.

The term "office" implies a delegation of power of sovereignty to an individual whose duty it becomes to perform or discharge all powers of sovereignty so conferred. It embraces tenure, duration and duties, and may or may not include compensation. It confers a public trust to be exercised in behalf of the sovereign government. The duties of the office may require the receipt and disbursement according to law of public money. See State ex rel. Swearingen v. Jones, 79 Fla. 56, 84 So. 84; Section 27 of Article III; Section 7 of Article XVI of the Constitution of Florida. It is our conclusion that the Florida Citrus Commission is a department of the State Government and each member thereof is an official of the State of Florida. Section 23 of Article 4 of the Constitution confers on the Comptroller the duty to determine in the disbursement of public moneys that the disbursements thereof shall be authorized by a legal appropriation and that the payment of a particular item, or items, presented to him for payment shall not expressly or impliedly violate a provision of law.

The command of the alternative writ is that the costs of the manufacture of the booklets be paid; (a) out of the Grapefruit Fund created by Chapter 17780, Acts of 1937; (b) out of the Orange Fund created by Chapter 17781, Acts of 1937; (c) out of the Tangerine Fund created by Chapter 17782, Acts of 1937, Laws of Florida. These respective funds were created by an excise tax on each standard box of grapefruit, oranges and tangerines grown in the State of Florida. The taxes levied by the terms of the respective Acts are to be paid to the Florida Citrus Commission and by it paid into the State Treasury to be kept by him in separate funds designated as Grapefruit Advertising Fund,

Orange Advertising Fund, and Tangerine Advertising Fund. The Citrus Commission is required to pay the necessary administrative expenses, and the residue thereof, inclusive of excise taxes levied and collected on grapefruit, oranges and tangerines, shall be expended for the advertisement thereof.

It is suggested that the Citrus Commission is a statutory corporation and charged with the duty of advertising citrus fruit, promoting sales thereof and increasing its consumption, and the tax on each box of citrus fruit and the funds created are definitely appropriated by the terms of the Act, which make it the mandatory duty of the Comptroller to pay the challenged account, because it is costs of advertising authorized by the Act. The power to tax can be exercised only pursuant to a valid statute. See Stewart v. Daytona & New Smyrna Inlet Dist., 94 Fla. 859, 114 So. 545. The power to tax is an attribute of sovereignty. See St. Lucie Estates v. Ashley, 105 Fla. 534, 141 So. 738. The Legislature levied the excise tax on each standard box of grapefruit, oranges and tangerines, and clothed the Citrus Commission with the power to collect and transmit the amount collected to the State Treasurer. While these funds were earmarked, the expenditure thereof by the Citrus Commission was authorized only for purposes enumerated by the Act, and broad, liberal, comprehensive and discretionary powers are granted the Commission for the advertisement of citrus fruit; the several media for advertising are broad and if the Commission concludes that the interest of the industry would be promoted by utilizing space in newspapers, magazines, trade papers, billboards, card space, or by purchasing time for radio broadcasts, and other media, then such ac-

tivities would be clearly within the legislative mandate. The Act confers on the Citrus Commission the power of sovereignty, establishes a State agency, and creates State officials, and the authority to expend or disburse the funds raised by taxation must be for the specific purposes enumerated in the Act.

The booklets entitled "For the Joy of Living," when distributed, become a media of advertisement conemplated by the Act. The work, labor, and materials going into or composing the booklets are items of cost authorized by the Act. The manufacture of the booklets is public printing for a state agency and when distributed it becomes a method of advertisement calculated to increase the consumption of citrus fruit and to promote the sale thereof. The Citrus Commission is authorized to requisition the Comptroller for the costs of advertisement and then it becomes the duty of the Comptroller to issue his warrant for the payment thereof. The challenged item in the sum of $10,796.67, being the cost of manufacturing the 500,000 booklets in New York City by the National Process Company upon the order of the Florida Citrus Commission, cannot be classified as advertisement within the meaning of the Act, as contended for, but the distribution of the booklets by the Commission as required by the terms of the Act would then in effect become advertisement. The manufacture or preparation of the booklets is public printing and was ordered by the Citrus Commission without a compliance with Chapter 16854, *supra*. The Florida Citrus Commission, at the time of placing the order for the booklets, was bound by the several provisions of Chapter 16854, *supra*. The issuance of the warrant by the Comptroller would be in contravention of said Act

and thereby violative of Section 23 of Article IV of the Constitution of Florida.

We have been favored wtih exhaustive briefs and able oral argument by counsel for the respective parties has been heard at the bar of this Court. The motion to strike the return and the motion for a peremptory writ, notwithstanding the answer or return, are each denied, and the alternative writ is quashed and the cause dismissed.

It is so ordered.

BROWN, C. J., WHITFIELD, BUFORD, THOMAS and ADAMS, JJ., concur.

TERRELL, J., dissents.

TERRELL, J., dissenting:

This case grows out of a contract between Arthur Kudner, Inc., and a New York company for lithographing some booklets to be used for advertising citrus fruits. The question raised turns on whether or not the booklets were "printing" as contemplated by Chapter 14824, Acts of 1931. The majority opinion answers this question in the affirmative which requires that such contracts be let to firms within the State.

I do not think this conclusion is warranted by reason, law, or morals. Chapter 14824, Acts of 1931, is limited in application to certain printing contracts. The Florida Citrus Commission was created and its powers defined by Chapter 16854, Acts of 1935, and amendatory Acts and provides a complete scheme for inspecting, marketing, and advertising citrus fruits. As to advertising them, the Act lays no restriction on the Commission except to require that it be done through an advertising agency within the State. Arthur Kudner, Inc., is such an agency and contracted

for the booklets in question to be lithographed in New York with the view of circularizing the markets with them. It is contended that this contract violates Chapter 14824, Acts of 1931.

On the facts, an examination of the booklets shows them to be composed of illustrated recipes for the use of citrus fruits. It also shows that approximately fifty per cent of their contents is lithographed and as to the balance, there is a question as to whether it should be construed as lithographing or printing. Actually the record discloses that the entire booklet was lithographed but on this point, if there had been reason for doubt, the Florida Citrus Commission settled the question and its judgment should prevail. It certainly should not be set at naught by the mere fiat of the Comptroller who has produced nothing to overcome the ruling of the Commission as required by Clark Printing and Binding Company v. Lee, 117 Fla. 779, 158 So. 461, 121 Fla. 320, 163 So. 702.

The Florida Citrus Commission approved the contract and considered the booklets advertising material to be used as directed in the Act. Advertising the sale and use of citrus fruits was vested exclusively in the Commission and they saw fit to do it by means of these booklets. If so much space had been taken in the Saturday Evening Post, the Ladies Home Journal, or some other publication to spread the benefits to be derived from more general use of citrus fruits, no question could have properly been raised as to the legality of the claim. The Citrus Commission evidently proceeded on the theory that the preparation and circularization of the booklets constituted "advertising" and I don't think they should be held in error for doing so.

On the ground of reason, there is not the semblance of a basis to extend the application of Chapter 14824, Acts of 1931, to the contract in question. Growing citrus fruits is one of Florida's chief businesses and like the tourist business, the winter vegetable business, the fish business, and every other business that brings business to the people of the State, depends on outside patronage for its support. If no one used citrus fruits but Florida people, the citrus business would not be catalogued as one of· our chief businesses. Neither would the tourist business or the winter vegetable business.

It is quite as important to encourage New York printers to buy Florida oranges as it is to encourage Florida printers to buy them but if it is to be the policy of this State to deliberately preclude the former from a chance at a contract like that in question, it is contrary to all human experience to say that they won't buy oranges from Texas, California, or even Palestine. If the use of citrus fruits is going to be increased, it will be done through the good neighbor policy; it will never be done through a "gimme" policy. I think the Legislature was conscious of this and intended Chapter 16854, Acts of 1935, to be all inclusive. I find no basis whatever to hamstring it by implication as proposed in the majority opinion.

Chapter 14824, Acts of 1931, has no place in a world committed to the good neighbor policy. It should under no circumstances be extended to doubtful cases. It is about as congenial to the good neighbor policy as a brace of tom cats would be to each other if thrown over the clothes line with their tails tied together. In fact the Florida orange grower of the good neighbor era arises in the morning to the chant of Old Domi-

neck who was imported from Missouri as a day old chick, he dons a shirt made in New Jersey, slips into a pair of overalls made in North Carolina of Alabama cotton, and a pair of shoes made in St. Louis from the hide of a Texas steer; he turns on his radio made in New York and listens to a Columbia announcer tell the world how his own boys are saluting Japs in Java with machine guns and how his neighbor's boys are saluting the Feuhrer from Iceland with bombing planes.  If the price of oranges is looking up, his wife greets him at dinner with a Kansas City steak broiled in a Pittsburg skillet, flanked with Georgia grits lubricated with ham gravy from an Iowa pig, tapered off with a cut of apple pie made of Virginia apples embroidered with Wisconsin cheese and a cup of coffee from Brazil, sweetened with Cuban sugar and stirred with a silver spoon from Nevada.  He drives to work in an automobile made in Detroit, cultivates his grove with a Chicago plow, hauls his oranges in a Michigan truck empowered by Oklahoma gas, and hopes that people from everywhere even California, will drink his orange juice.  He sleeps on a Grand Rapids bed, sits on a High Point chair, cooks on a General Electric stove, and gets his religion and code of morals from the Bible that came from Egypt, Babylon, and Israel and is governed by the Common Law of England after being tinctured with the civil law from Rome; in fine, he patronizes the four points of the compass and is such an embodiment of the good neighbor philosophy that the cackle of his hens is about the only homespun product on the grove.

How it can be said that he smacks of the isolationist or cannot prepare a dodger outside the State to proclaim the virtues and vitamins in orange juice is be-

yond me when in the very nature of the industry, it must have outside patronage to survive. Chapter 14824, Acts of 1931, erects a trade barrier that should not be extended to the citrus business by implication. Such barriers are becoming very embarrassing to interstate and intersectional relations, each state may retaliate in kind, they engender local hatreds, they react badly on the general welfare and are out of harmony with the spirit of our democracy.

On the morals of the issue, it is sufficient to say that the contract for the booklets was made and executed in good faith, the Citrus Commission used them to advertise Florida citrus fruits, the citrus industry got the benefit of the advertising, and as a matter of common honesty, the bill should be paid.

I therefore dissent.