THOMAS, Justice.
In Chapter 25462, Laws of Florida, Acts of 1949, F.S.A. § 236.04 note, which became effective 1 January 1951, it was provided that members of 'boards of public instruction in counties having not fewer than 1451 instruction units should receive as compensation $200 per month. Dade County, where appellant serves as a member of the Board of Public Instruction, fell within the classification of the act. Appellant was elected to his position in 1950 and took office in January, 1951. When he became a candidate for the place, it had been provided that he would receive the amount stated, and when he entered upon the duties of the office, the act was in operation. Later, by Chapter 27054, Laws of Florida, Acts of 1951, the compensation was raised to $300 monthly.
The legislature then enacted a law, Chapter 28466, Laws of Florida, Acts of 1953, repealing Chapter 27054, supra, repealing any other act fixing compensation of members of boards of public instruction in counties having a population of not less than 400,000, and expressing “the intention of this legislature to see that the boards of public instruction of such counties receive no compensation for holding their elective office except for the expense money which is provided for them by general law.” ' See Sec. 15, Article XII of the Constitution, F.S.A
The appellant charges that the last act is unconstitutional because (1) it is tantamount to removing him from office, (2) it violates the “due process” clauses of the state and federal constitutions; (3) it offends against the “equal protection” provisions of both constitutions; and (4) it violates the constitutional provisions for separation of powers of the departments of government.
The chancellor entered a summary final decree sustaining the law and the appellant brought the matter here.
Appellant reminds us that he, as a member of the board, was not subject to impeachment under Sec. 29 of Article III of the Constitution but could be suspended or removed from his office only for malfeasance, misfeasance, neglect of duty, commission of a felony, drunkenness or incompetency, under Sec. 15 of Article IV of the Constitution.
The legislature is charged with providing for the election or appointment of officers “not * * * provided for by [the] Con-' stitution” and with fixing their compensation, Sec. 27, Article III.
It is appellant’s contention that when the legislature deprives an officer of his salary or so lowers it that competent persons will not serve for the compensation, it amounts to removing the officer without cause. The decision of the Supreme Court of Louisiana in State ex rel. Thurmond v. City of Shreveport, 124 La. 178, 50 So. 3, is typical of the authorities he cites supporting his position. It is true that if there be no check at all on the legislative function to fix and revise remuneration, the legislative branch of the government could stall, if not cripple, the judicial and executive branches by simply reducing compensation to the point where no competent officials of those departments would or could serve, or by eliminating compensation altogether. Such action would then accomplish indirectly a violation of the organic law the same as if the *876 offices were abolished directly. In practical effect there would be no difference. It was never intended that although the legislature could not abolish a constitutional office, that .body could eliminate the officer by the starvation method. An attempt in that direction would collide with Article II of the Constitution. But we do not find it logical to apply the pronouncements of this and like cases dealing with constitutional offices to those involving statutory offices. We have not overlooked the fact that the Louisiana Court was treating of the attempted action of a city council to abolish an office established in the charter, but the principle is the same because the charter granted by the legislature served as the city’s constitution.
We have held that “[o]ne’s right to office and the emoluments thereof is protected by the Fourteenth Amendment”, State ex rel. Hatton v. Joughin, 103 Fla. 877, 138 So. 392, 393, but in that case the question of the sufficiency of the notice and hearing was under attack and there was no occasion to found a decision on the effect upon emoluments as dissociated from right to hold the office. The compensation was coupled with the office, but incidental to it.
We would have no difficulty agreeing with the appellant’s position with reference to the invalidity of an act that abolished compensation or reduced it below a certain minimum, when applied to constitutional offices, 'but we cannot follow his reasoning to the point of invoking the doctrine where purely statutory offices that may be established or abolished by the legislature are concerned. Cf. Downs v. City of Birmingham, 240 Ala. 177, 198 So. 231.
In appellant’s case he was elected to an office which was to pay $200 monthly, and during his term this compensation was increased to $300. In addition he was to receive certain allowances to cover the expenses of performing his duties. Upon the enactment of the law under attack, he was relegated for compensation, or reimbursement, solely to the general law, now See. 242.02, Florida Statutes 1953, and F.S.A. So the income from the office was transposed from the salary we have stated and certain allowances for expenses, to a per diem of ten dollars for expenses limited to twenty-four days a year, and a further allowance of seven and one-half cents for each mile traveled “to and from the county court house.”
Although appellant may feel that from a moral standpoint he has been wronged, we fail to find a sound reason for the court to help him by entering the sphere of the legislature.
 Our examination of the cited authorities has convinced us that it is the general rule that the legislature may diminish the salaries of statutory officers during their terms in the absence of a constitutional inhibition against such action, State ex. rel. Miller v. Lani, 55 Nev. 123, 27 P.2d 537; Maricopa County v. Rodgers, 52 Ariz. 19, 78 P.2d 989, and that the constitutional power to “fix” compensation which we find in Sec. 27, Article III, includes the power to adjust and regulate compensation, Woodcock v. Dick, 36 Cal.2d 146, 222 P.2d 667.
There is no limitation in the constitution on the power of the legislature to adjust or regulate compensation of statutory officers and we cannot, therefore, hold that the legislature could not reduce appellant’s compensation from $200 a month to what he could save from an allowance of ten dollars for each meeting he attended. Taylor v. Dorsey, 155 Fla. 305, 19 So.2d 876.
The office was not a grant for the benefit of appellant, Hunter v. Conner, 152 Tenn. 258, 277 S.W. 71, but conferred a public trust to be exercised in behalf of the sovereign government. State ex rel. Arthur Kudner, Inc., v. Lee, 150 Fla. 35, 7 So.2d 110.
The legislature could create the office, abolish it, and regulate the emoluments of the office. Having such authority there is no substance to the complaint that reduction of income amounted to removing appellant from office. He still retains the office, still exercises the “public trust.” In adopting this view, we necessarily con- *877 elude that none of his constitutional guaranties has been violated.
Affirmed.
ROBERTS, C. J., and TERRELL, SE-BRING, HOBSON and MATHEWS, JJ., concur.
DREW, J., dissents.