146 So.2d 108 (1962)
ROBINSON'S, INC., a Florida Corporation, Appellant,
v.
Arthur SHORT, Appellee.
Ray E. GREEN, As Comptroller, of the State of Florida, Appellant,
v.
Arthur SHORT, Appellee.
Nos. D-253, D-255.
District Court of Appeal of Florida. First District.
November 1, 1962.
Rehearing Denied November 20, 1962.
*109 Leo L. Foster, of Parker, Foster & Madigan, Tallahassee, for appellant Robinson's, Inc.
Richard W. Ervin, Atty. Gen., and Edward S. Jaffry, Asst. Atty. Gen., for appellant Ray E. Green.
William A. Hamilton, of Jennings, Watts, Clarke & Hamilton, Jacksonville, and J. Lewis Hall, Jr., of Hall, Hartwell & Hall, Tallahassee, for appellee.
RAWLS, Judge.
Arthur Short, a resident of Broward County and a taxpayer to the N.B. Broward Drainage District, brought this action for declaratory decree against Ray Green, Comptroller, and Robinson's, Inc. seeking to determine the legality of the specifications and bids upon which a class "B" printing contract was awarded to defendant Robinson's and to enjoin performance of the contract, or if performed, payment thereon.
In response to the Comptroller's advertisement for bids for the manufacture of the 1961 tax notices for Broward County and several special tax districts located in that county two Florida printing firms submitted the requisite samples and bid prices. Lewis Business Forms, Inc., submitted a bid of $13,337.79, and Robinson's submitted a bid of $19,507.63. As required by the *110 specifications samples were transmitted to the Tax Collector of Broward County for his approval and recommendation. Although he had no knowledge of the bid prices,[1] the Tax Collector after examination of the samples recommended on March 23, 1961, that the contract be awarded to Robinson's. On April 3, 1961, the Comptroller advised Lewis Business Forms that Robinson's was the successful bidder. Lewis Business Forms protested the award by letter dated April 4, 1961; the Tax Collector issued his purchase order to Robinson's by letter dated April 6, 1961; and the original complaint for this action was filed April 18, 1961, alleging that the contract was awarded in violation of Chapters 283 and 287, F.S., and in violation of the Printing Rules and Regulations promulgated by the State Purchasing Commission.
In an order dated June 9, 1961, the chancellor found that the statutory requirement of competitive bidding as a basis for awarding the contract to the lowest responsible bidder positively requires that there be adequate, reasonable and definite specifications which afford a reasonable basis for comparison of bids, but found that the specifications complied with this requirement by providing that the forms be "securely fastened" in the left and right control margins. However, the chancellor found that the reservation to the Tax Collector to determine from the samples submitted the paper and carbon etc. "best meeting his requirements" would permit only one bidder to qualify and was such a reservation as could permit favoritism; and, therefore, the, specifications failed to meet the requirements of F.S. § 287.081, F.S.A., relative to competive bids and the demands of §§ 283.01 and 283.10 requiring contracts to be awarded to the lowest responsible bidder. In his final decree of February 23, 1962, the chancellor adhered to his rulings announced in his June 9 order and in addition found that the Tax Collector's principal reason for selecting Robinson's was his favorable experience with that firm the previous year; that the contract was invalid; that the harsh rule of law which would prohibit a contractor from collecting under a void contract may, in equity, be tempered if the contractor acted in good faith and exercised reasonable care to comply with the law; that Robinson's may claim actual cost not exceeding reasonable market value on a quantum meruit basis for work performed; that the acceptance of the bid by the Purchasing Commission would constitute a determination that such printing could not be manufactured by one of two or more qualified firms in the state; and that actual costs incurred amounted to $14,394.00. Green and Robinson's appealed separately.
A summation of the numerous points raised by the parties is:
1. Is appellee Short such a taxpayer as to qualify him to bring this action, and, if so, whether an action for declaratory decree will lie?
2. Are the specifications adequate in light of applicable statutes and regulations?
3. If contract is found to be void, may Robinson's Inc. lawfully be awarded compensation under the theory of quantum meruit?
The appellants contend that plaintiff Short, a mere taxpayer, is not possessed of that special interest required of a plaintiff in declaratory decree proceedings. It is submitted that by his failure to proceed in injunction the State was without the protection of an adequate injunction bond and was placed in a position of being compelled to force Robinson's to perform the contract while it was the subject of attack. We cannot *111 agree with this contention. R.L. Bernardo & Sons, Inc. v. Duncan[2] held on page 302:
"If under these authorities a citizen and taxpayer has the right to injunctive relief to restrain the illegal disbursement of public funds, he would likewise have the right to declaratory relief adjudging that a disbursement of public funds already made was illegal and unauthorized, coupled with the right to have such illegal disbursement returned to the public treasury." [Emphasis supplied.]
It naturally follows that if a citizen and taxpayer, when suing as such, has the right to injunctive relief to protect tax funds against illegal disbursement which will result from the carrying out of an unauthorized or illegal contract and if such citizen and taxpayer has the right to declaratory relief adjudging that a disbursement already made was illegal and such right is coupled with the right to have such illegal disbursement returned to the public treasury, he would likewise have the right to declaratory relief at any stage of the awarding and performance of an illegal contract.
The elements essential to a declaratory proceeding have been stated in May v. Holley,[3] and reiterated in Grable v. Hillsborough County Port Authority[4] on page 425:
"Before any proceeding for declaratory relief should be entertained it should be clearly made to appear that there is a bona fide, actual, present practical need for the declaration; that the declaration should deal with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts; that some immunity, power, privilege or right of the complaining party is dependent upon the facts or the law applicable to the facts; that there is some person or persons who have, or reasonably may have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law; that the antagonistic and adverse interest are all before the court by proper process or class representation and that the relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity."
Appellants urge that in the instant cause there is no present justiciable controversy and cite the cases of Grable v. Hillsborough County Port Authority[5] and Ashe v. City of Boca Raton[6] in support of this contention. In the Grable case a taxpayer by declaratory proceedings questioned the propriety of the port authority's sale of certain submerged lands to a company which at its own expense had previously filled same and after the sale but prior to the commencement of the declaratory proceedings had leased the land in question to another company which was not a party to the action. It was further noted that the plaintiff had not appeared at an advertised public hearing held prior to the sale for the purpose of receiving objections, and the plaintiff had made no effort to restrain or halt the sale and did not seek to set it aside. Since plaintiff was only seeking an advisory opinion of the court, the question was moot and no present justiciable controversy existed.
Likewise, the Ashe case dealt with a taxpayer's action for declaratory decree to invalidate a deed given by the city to the *112 State Board of Education conveying lands received by the city from the Federal government subject to the restriction that the lands be used for airport purposes. The appellate court concluded that the complaint had been properly dismissed because the Federal Aviation Agency was not a party to the proceedings; municipal tax funds were not involved and had not been used in the acquisition of the property from the Federal government; and the plaintiff pleaded no special legal interest to be determined or protected.
Unlike the Grable and Ashe cases all necessary persons were made parties to the instant proceeding which did involve a present justiciable controversy  the possibility of an unauthorized and illegal expenditure of public funds. In such cases the plaintiff-taxpayer need not prove an increased public burden or a special injury to himself distinct from that of every other inhabitant.[7]
Appellants next contend that since Short is an employee of a subsidiary of Lewis Business Forms, Inc., he is estopped by the doctrine of unclean hands to seek the aid of a court of equity. This jurisdiction has consistently followed the principle which was concisely stated in Brooker v. Smith[8] on page 794:
"There is at least one, generally recognized exception to the `clean hands' maxim; that is, the motives of the plaintiff in bringing a taxpayer's suit are immaterial."
and we, therefore, conclude that Short was not estopped to bring this action.
The principal contention of the appellants is that the specifications did comply with the applicable statutes and regulations. The controversial portions of the specifications are:

"Fastening: It is a requirement of the forms handling that the first three copies of the four-part forms and all three copies of the three-part forms are to be securely fastened in both the left and right control margins with a permanent type of fastening. Bidders are required to submit a full detailed description of the fastening method on which his bid is based.

"Performance of Bidder: Each bidder is to submit to the Purchasing Agent, State Comptroller's Office, at 10:00 A.M. three days prior to the opening of the bid, the following materials and items:
"1. Paper and carbon samples.
"2. A statement clearly setting forth the construction and assembly of the form, including the fastening specifications on which his bid will be based. This must also include a diagram to indicate the position of each part of paper and carbon, the size of each part of carbon and the manner or method of fastening which will be provided.
"3. Samples of forms featuring fastening method.
"The award of the bid will be made based only upon the approval by the Tax Collector of Broward County of the fastening specifications and forms construction, and the paper and carbon sample best meeting his requirements as set forth above." [Emphasis supplied.]
This contention must be examined in light of the language used in the specifications together with applicable statutes and decisions touching upon same.
F.S. § 283.01, F.S.A., provides:
"All the public printing of the state shall be let out upon contract to the lowest responsible bidder, who shall furnish all paper and other material *113 used in printing and binding." [Emphasis supplied.]
The "meat" of the specifications is contained in the provisions relating to the fastening methods and forms construction best meeting the Broward County Tax Collector's requirements. Such language is entirely too vague and indefinite to establish a base upon which competitive bids may be submitted. The evidence contained in this record revealed that the tax collector, the scrivener of the specifications, knew at the time of drafting same, which type of fasteners would best meet his requirements. However, the type of fastening was not designated. It is obvious from the testimony adduced before the chancellor that any "securely fastening" method would not have been acceptable to the Tax Collector. Several "securely fastening" methods were available, i.e., gum, glue, crimping, or stapling. Prior to drafting the specifications, the Tax Collector had decided that the only type fastening which would best meet his requirements was stapling and this being the case, he should have so detailed in the invitation to bid. It appears that the Tax Collector in his selection relied not only upon the favorable experience he had with Robinson's the previous year but also upon the "assistance" that Robinson's had given him, all without ever having made any comparison of the actual amounts bid. It is inconceivable that a contract required by law to be let to the "lowest responsible bidder" could be awarded solely upon the recommendation of one who had no knowledge of the amount of the bids, although the statutes require award to the lowest responsible bidder and Regulation 4-15 of the State Purchasing Commission's regulations require the price, in addition to other factors, to be considered in awarding the contract. In spite of all the laws enacted and the regulations promulgated on the subject, the State Purchasing Commission after consultation with the Attorney General's office decided that the contract could be awarded as recommended by the Tax Collector.
Appellant urges that the Tax Collector's decision was primarily based upon a test of samples submitted by Robinson's and Lewis and the use of samples submitted with bids has been approved in this state.[9]
Consideration can and should be given to the differences in the quality of manufactured products, but specifications for custom made products must be sufficiently specific to permit bidders to bid upon the same product, and factors thereof which are of such importance as to be given special consideration in determining the successful bidder should be so covered in the specifications as to detail to all bidders the standards anticipated, the tests the product must meet, and all factors upon which the product will be judged and the award made.
Laws requiring contracts to be let to the lowest responsible bidder are of great importance to the taxpayers, and ought not to be frittered away by exceptions. As stated in the landmark case of Wester v. Belote[10] on page 724:
"In so far as they thus serve the object of protecting the public against collusive contracts and prevent favoritism toward contractors by public officials and tend to secure fair competition upon equal terms to all bidders, they remove temptation on the part of public officers to seek private gain at the taxpayers' expense, are of highly remedial character, and should receive a construction always which will fully effectuate and advance their true intent and purpose and which will avoid the likelihood of same being circumvented, evaded, or defeated.
* * * * * *
"* * * [I]t is the duty of public officers charged with the responsibility of letting contracts under the statute to adopt, in advance of calling for bids, *114 reasonably definite plans or specifications, as a basis on which bids may be received. Such officers, in view of such requirement, are without power to reserve in the plans or specifications so prepared in advance of the letting the power to make exceptions, releases, and modifications in the contract after it is let, which will afford opportunities for favoritism, whether any favoritism is actually practiced or not. Neither can they include other reservations which by their necessary effect will render it impossible to make an exact comparison of bids. Clark v. Melson, 82 Fla. 230, 89 So. 495; Dillon, Municipal Corp., § 807, page 1211; 15 Corpus Juris, 550; 19 R.C.L. 1070; 3 McQuillin on Municipal Corp. (2d Ed.) pages 885, 886." [Emphasis supplied.]
The necessary effect of the reservations in the instant specifications is to render impossible an exact comparison of bids. The purpose of specifications is to specify; and since such was not done in the instant cause, we find same to have been defective. We further conclude that the chancellor was correct in holding that the specifications were drawn in such a manner as would permit only one bidder to qualify, this being such a reservation as would permit favoritism.
We are now faced with the problem of whether Robinson's, the printer who was compelled by the Comptroller to perform the void contract while it was under an attack alleging no fraud, corruption or unfair practices on the part of either party to the contract, may recover on a quantum meruit basis.
The bid submitted by Lewis Business Forms specified that the forms would be manufactured in its plant in Jacksonville, Florida, whereas the bid submitted by Robinson's indicated that Items 1 through 11 would not be manufactured in Florida but Item 12 would be. These bids are part of the record. The chancellor disposed of the question of validity of specifications in his June 9 order denying motion to dismiss and refused later to admit testimony as to the place of performance of the contract except as same may effect recovery under quantum meruit. We will do likewise, in view of the preceding holding relative to the indefiniteness of the specifications.
Appellee takes the position that the chancellor erred in allowing Robinson's to recover on quantum meruit since from the outset it proposed that the bulk of the printing be manufactured outside the State of Florida; that irrespective of the deficiency in the specifications, Robinson's knew or should have known that such a proposal was in violation of the statutes and Purchasing Commission regulations, and in support of this contention cites applicable statutes, regulations and decisions rendered by the Supreme Court.
F.S. § 283.03, F.S.A., provides that "All the public printing * * * shall be done in the state * * *."
F.S. § 283.10, F.S.A., relative to Class B printing provides that "* * * each job * * * shall be let separately under regulations adopted by the state purchasing commission to the lowest responsible bidder who shall manufacture the same within the state."
State Purchasing Commission Regulation 4-2 for Class B printing provides: "All printing * * * shall be manufactured in the State of Florida; provided, however, that in any case in which an agency shall make a determination that such printing cannot be manufactured by one of two or more competing qualified printing firms in the State of Florida, then the agency may obtain the printing from out-of-state manufacturers."
State ex rel. W.R. Clark Printing and Binding Co. v. Lee[11] stated on page 462:
"Under the foregoing statutes, all of the public printing of the state of Florida *115 must, where there are Florida concerns prepared to submit competitive bids for doing it, be let out to and executed in plants located within the state of Florida, and any arrangement or device, directly or indirectly entered into, for having it done otherwise, is void and of no effect because prohibited by statute."
State ex rel. Arthur Kudner, Inc. v. Lee,[12] is a proceeding in mandamus to compel the comptroller to issue his warrant to pay for the printing (Class B) of a booklet ordered and used by the Citrus Commission, a department of the State. In this case the Citrus Commission completely ignored all phases of the law requiring the letting of printing contracts by competitive bidding but contracted with Arthur Kudner, Inc., (an advertising agency already under contract to the Citrus Commission to handle its advertising) for the preparation and printing of the booklet in question. Kudner, Inc. in turn procured a New York City firm to manufacture the booklet subsequent to an admonition by the Comptroller to the Citrus Commission relative to compliance with the law. The Florida Supreme Court quashed the writ holding that under such circumstances the Comptroller could not constitutionally issue his warrant in payment of such unauthorized and illegal expenditure. Unlike that case, some attempt was made in the instant case to comply with the competitive bidding statutes.
In Robert G. Lassiter & Co. v. Taylor[13] the Supreme Court upheld the lower court's order overruling a demurrer to a taxpayer's complaint and granting a temporary injunction restraining the city from paying the balance due to a road contractor on a contract for street improvements. In that case after the contract was let to the lowest bidder, the contractor and city agreed upon changes which were so materially different as to amount to a new contract without competitive bidding. The complaint also alleged failure of the contractor to comply with the changed contract and poor workmanship, but did not seek to recover payments already made, only to restrain the payment of the balance due which was being held by the city apparently on account of faulty construction. Therefore, this case is no authority for the principle that a taxpayer can by proper procedure restrain the full payment of public funds under void and unauthorized contracts when the State has received and enjoys the benefits of the contract.
Although Anderson v. Fuller[14] stated the above principle, citing two foreign jurisdictions and Peck v. Spencer,[15] the facts did not indicate any performance under the void contract and, therefore, no benefit received by the city thereunder. As in the case at bar, the contracts were held to be void due to faulty specification and the Supreme Court held that the chancellor erred in denying the plaintiff-taxpayer's application for a temporary injunction to restrain the contractor from carrying out the terms of the contract. The Peck case, supra, cited by the Anderson case for the nebulous principle which we are pursuing, likewise held that the chancellor properly issued a temporary restraining order preventing the city from employing counsel at city expense to defend suits and threatened suits against the councilmen. Here again the city received no benefits and the facts did not indicate any performance under an illegal contract.
Jones v. Pinellas County,[16] stands as authority for the principle that a county is not liable, under implied contract for labor and *116 materials, to a contractor who began construction of a county jail pursuant to an invalid contract (the County Commissioner's resolution authorizing same failed to contain the mandatory words "that it was necessary") when the express contract was predicated upon a void resolution and when the contract by its terms indicated that no funds were available and that same would be paid for by warrants payable in the future from funds derived from a "building tax" not yet levied. Here the contract was considered void for a direct evasion of an express mandatory provision.
Appellee eloquently argues that the foregoing decisions demonstrate error by the chancellor in permitting Robinson's to recover in quantum meruit. However, the instant cause should not be confused with mandamus suits to enforce payment under a void contract, actions at law to collect on such contracts, proceedings in injunction where the contractor has been restrained from entering into performance of void contracts, and suits on implied contracts. Nor should it be confused with contracts let without making a bona fide effort to comply with the competitive bid statutes.
The facts in the instant case do not fall squarely within the rules laid down in any of the cases cited above. Robinson's bid clearly stated that if successful, the major portion of the printing (Items 1-11) would be manufactured outside the state. Actual fraud was not charged and the award was made after careful review of the Purchasing Commission on advice of the Attorney General. Although the complaint for declaratory decree was originally filed a few days after the award of the contract, the contractor was not enjoined from acting to his detriment by proceeding to perform the contract, but on the contrary the contractor was compelled to perform by the Comptroller who was faced with the dilemma of placing Broward in a position of great loss had the county not been furnished with the tax forms in time to collect its annual revenue. It was not until September 1, 1961, that the plaintiff moved for an order staying payment. At that time the plaintiff had reason to believe that the tax notices had been manufactured, delivered to the county and were in the process of being prepared for distribution to the taxpayers.
An early decision of the Supreme Court, Lainhart v. Burr[17] established the principle that recovery, in certain type cases such as the one being considered, could be had upon quantum valebant. There, it appeared that some of the county commissioners were, through employees of the county, purchasing goods needed by the county from firms owned by some of the Commissioners. Citizens and taxpayers by bill in equity, prayed that the Commissioners be required to restore all funds illegally disbursed. The chancellor held that such transactions constituted an unlawful taking and appropriation of the county's funds and required the Commissioners to pay same into the registry of the court. On appeal, the Supreme Court held such transactions to be void as against public policy; however, it stated that the commissioners would be required to account only for such transactions as were tainted with actual fraud, or for such supplies as were not necessary and beneficial to the county, or which could not have been lawfully purchased from other persons for the use of the county. The Supreme Court further set out the rule upon which recovery could be made by the commissioners upon quantum valebant when it stated on page 715:
"* * * [T]he great weight of authority sustains the right of the party supplying the goods to recover what he has actually expended, or what the supplies were reasonably worth, where no actual fraud was intended or perpetrated, and the supplies were necessary and beneficial to the county, applying with modifications the general rule which imposes liability upon an individual for goods accepted and used by him *117 under such circumstances as to exclude the idea of a gift. This rule, founded in justice, is much restricted in its application to persons under disability, such as infants and married women. It is necessarily much restricted in respect to mere governmental agencies, particularly counties, whose powers are limited and restricted in many ways. * * * While there is some conflict in the authorities as to the proper measure of recovery, where the law raises the implication to pay in cases like the present, we think the better rule is to confine the recovery to the actual cost to the party furnishing the supplies, provided that does not exceed the reasonable fair value, and to disallow every element of profit involved in the transaction." [Emphasis supplied.]
Webb v. Hillsborough County[18] held that where a county has in good faith entered into a written contract, which  after being fully performed and the benefits are being enjoyed by the public  was found to be invalid and void from its inception due to the unconstitutionality of the act authorizing the contract, the contractor was entitled to recovery on quantum meruit for the value of work done and materials furnished. The court recognized this as an exception to the rule of law relative to the nonenforceability of ultra vires contracts. The Webb case and the case at bar are analogous in that the invalidity of the contracts was not finally determined until after full performance and the benefits were being enjoyed by the public.
Wester v. Belote,[19] like the case at bar, dealt with a contract which was void because the specifications were not in conformity to the requirement as to certainty. Bearing in mind that this case involved an injunction proceeding and that the contract was awarded to the lowest bidder, the Supreme Court in affirming the order denying the injunction stated on page 726 of 138 So.:
"In such cases the rule is that, where a contract has already been awarded, and the award appears to have been made in apparent good faith, in an honest effort to pursue the requirements of competitive bidding statutes, and it is not shown that the contract as actually entered into is to the public disadvantage in any way, nor that it has been entered into with unlawful or fraudulent intent on the part of the public officials letting it, the granting of an interlocutory injunction to restrain payments under such a contract to the contracting party may rest within the sound discretion of the chancellor, dependent upon the equities involved." [Emphasis supplied.]
In the instant case the able chancellor, after giving full consideration to the lengthy pleadings, exhibits, testimony and arguments of respective counsel, in his extensive conclusions found:
"In the instant case there was the preparation and circulation of specifications calling for competitive bids. Two bidders responded and an award was made to one of them. The defect which voided the contract was one which this Court finds to be the basis of a justiciable controversy and under a doubt which required a judicial declaration to dissolve. There is no evidence of actual fraud or misconduct. With regard to favoritism or discrimination, it does appear that the tax collector to whom the Comptroller substantially delegated the decision of awarding the contract was disposed to favor Robinson's, Inc. However, it was not a personal favoritism but a quality of product favoritism. This does not have the taint of corruption but is another illustration that there *118 must be no profit in even good faith transactions that are not in strict compliance with the law.
* * * * * *
"The printing involved is not itself illegal or contrary to public policy. It also meets the test of being necessary and beneficial. Lainhart v. Burr, [49 Fla. 315, 38 So. 711] supra. The equities in this cause would authorize the defendant Robinson's to be paid only actual cost incurred on its printing, namely, $14,394.00, which the Court finds to not be in excess of the reasonable market value of the goods and services. The Court has not overlooked the fact that Lewis Business Forms, Inc. submitted a lower bid. However, that bid is also void and is not binding on the Court as a determination of reasonable market value."
Therefore, we hold that where a contract has already been awarded and the award appears to have been made in good faith, although to the public disadvantage as not having been awarded to the lowest responsible bidder who will manufacture same within the State, but where the validity of the contract was contested in proceedings for declaratory decree and it clearly appears that no effort was made to restrain performance pending disposition of the litigation, but that performance of the contract pending litigation was essential to prevent great loss to the public, the chancellor did not abuse his discretion in permitting the contractor to recover under quantum meruit for furnishing to the county a product which the county is authorized to purchase for its proper operation and which will be used by that county.
Appellants contend that the chancellor erred in arriving at the sum of $14,304.00 as representing its actual costs and points out that the unrebutted testimony reflects its actual costs to be $14,939.00. In this respect we conclude that the chancellor erred. In his final decree the chancellor found that "the actual costs do not appear to be out of line and under the circumstances the defendant Robinson's should not be compelled to receive less." As to Robinson's claim of loss of profit, the chancellor was eminently correct in denying recovery.
The chancellor is directed to amend the final decree to reflect Robinson's actual cost as being $14,939.00; otherwise the final decree is affirmed.
WIGGINTON, Acting C.J., and STURGIS, J., concur.
NOTES
[1] He testified: "At the time I wrote back up there, I knew then that the Lewis Company  they were apparently the low bidders. How much, I don't know. I still don't know the bid. There is one place they tell us how much Mr., * * * The Lewis Company, in some of our correspondence, I still don't know what their figure is."
[2] R.L. Bernardo & Sons, Inc. v. Duncan, 134 So.2d 297 (Fla.App.1st, 1961).
[3] May v. Holley, 59 So.2d 636, 639 (Fla. 1952).
[4] Grable v. Hillsborough County Port Authority, 132 So.2d 423, 425 (Fla.App. 1961).
[5] Ibid.
[6] Ashe v. City of Boca Raton, 133 So.2d 122 (Fla.App., 1961).
[7] R.L. Bernardo & Sons, Inc. v. Duncan, p. 303, Footnote 1.
[8] Brooker v. Smith, 108 So.2d 790 (Fla. App., 1959). See also R.D. Lamar, Inc. v. Ray, 132 Fla. 704, 182 So. 292 (1938).
[9] Suburban Investment Co. v. Hyde, 61 Fla. 809, 55 So. 76 (1911).
[10] Wester v. Belote, 103 Fla. 976, 138 So. 721, 724 (1931).
[11] State ex rel. W.R. Clark Printing and Binding Co. v. Lee, 117 Fla. 779, 158 So. 461 (1934).
[12] State ex rel. Arthur Kudner, Inc. v. Lee, 150 Fla. 35, 7 So.2d 110 (1942).
[13] Robert G. Lassiter & Co. v. Taylor, 99 Fla. 819, 128 So. 14, 69 A.L.R. 689 (1930).
[14] Anderson v. Fuller, 51 Fla. 380, 41 So. 684 (1906).
[15] Peck v. Spencer, 26 Fla. 23, 7 So. 642 (1990).
[16] Jones v. Pinellas County, 81 Fla. 613, 88 So. 388 (1921).
[17] Lainhart v. Burr, 49 Fla. 315, 38 So. 711 (1905).
[18] Webb v. Hillsborough County, 128 Fla. 471, 175 So. 874 (1935).
[19] Wester v. Belote, see Footnote 10.