E. W. WESTER, *Appellant*, vs. W. P. BELOTE, C. W. HERLONG, A. T. BROWN, J. F. HAMMOND and A. E. ADAMSON, all residents of Duval County, Florida, as and constituting the Board of County Commissioners of Duval County, Florida, a political subdivision of the State of Florida, et al., *Appellees*.
138 So. 721.
Division B.
Opinion filed December 23, 1931.

*J. Turner Butler,* of Jacksonville, for Appellant;

*Valz & Wise, Roswell King,* and *John E. Mathews,* of Jacksonville, for Appellees.

DAVIS, J.—From an order of the Circuit Court of Duval

County denying an injunction against the Board of County Commissioners, an appeal has been taken and the cause presented here on an application by complainant for an original injunction from this court in the nature of a supersedeas. Because of the public question involved, the cause has been advanced for hearing on the merits. See L. Maxcy v. Mayo, Commr. of Agriculture, decided at the present term.

In July, 1931, the County Commissioners advertised for bids for furnishing approximately 50,000 cubic yards of clean dredged oyster shell.

Bids were submitted by Atlantic Shell Company, Duval Engineering & Contracting Company, Jacksonville Sand Company and Cleveland Johnson & Son. The contract was awarded to the Atlantic Shell Company at a price of 61c per cubic yard loaded on county lighters, FOB company's dredge, and all the other bids rejected. This was on August 1, 1931, and on September 2, 1931, the appellant here, as a citizen and taxpayer of Duval County, filed his bill praying for an injunction enjoining and restraining the County Commissioners and Clerk of the Circuit Court from signing any county warrants paying for the material advertised for; a contract for which had been awarded to Atlantic Shell Company.

After hearing upon the bill, answer and affidavits, the injunction prayed for was denied. It is the interlocutory order to that effect which forms the basis of this appeal.

Chapter 11917, Acts of 1927, which is Section 2195 C. G. L., provides as follows:

"Competitive bids in counties with population of one hundred and fifty thousand or over where amount involved is over one thousand dollars,—In all of the counties of the State of Florida with a population of one hundred and fifty thousand or over, according to the last preceding census authorized by the Legislature of the State of Florida no contract shall be let by the board of county commissioners for the working of any

road or street, the construction or building of any bridge, erecting or building of any house, nor shall any goods, supplies or materials for county purposes or uses be purchased when the amount to be paid therefor by the county shall exceed one thousand dollars unless notice thereof shall be advertised once a week for at least two weeks, calling for bids of the work to be done or for the goods, supplies or materials to be purchased by the county, and in each case the bid of the lowest responsible bidder shall be accepted unless the county commissioners shall reject all bids.

Where the amount of contract or the price to be paid by the county is less than one thousand dollars, no advertisement or competitive bidding, as above required, shall be necessary.''

It is contended by appellant that the object and purpose of this statute is to protect the public against collusive contracts; to secure fair competition upon equal terms to all bidders; to remove not only collusion but temptation for collusion and opportunity for gain at public expense; to close all avenues to favoritism and fraud in its various forms; to secure the best values for the county at the lowest possible expense, and to afford an equal advantage to all desiring to do business with the county, by affording an opportunity for an exact comparison of bids.

Laws of this kind requiring contracts to be let to the lowest bidder are based upon public economy, are of great importance to the taxpayers and ought not to be frittered away by exceptions.

They originated, perhaps, in distrust of public officers whose duty it is to make public contracts, but they also serve the purpose of affording to the business men and taxpayers of the counties and other governmental subdivisions affected by them, a fair opportunity to participate in the benefits flowing from such contracts, which are nowadays amongst the most important items of the present day business world.

Insofar as they thus serve the object of protecting the

public against collusive contracts and prevent favoritism toward contractors by public officials, and tend to secure fair competition upon equal terms to all bidders, they remove temptation on the part of public officers to seek private gain at the taxpayers' expense, are of highly remedial character, and should receive a construction always, which will fully effectuate and advance their true intent and purpose and which will avoid the likelihood of same being circumvented, evaded or defeated: Hanan v. Board of Education, 25 Okla. 372, 107 Pac. 646, 30 L. R. A. (N. S.) 214; Fones Bros. Hardware Co. v. Erb, 54 Ark. 645, 17 S. W. 7, 13 L. R. A. 353; Lassiter v. Taylor, 99 Fla. 819, 129 Sou. Rep. 14; Anderson v. Fuller, 51 Fla. 380, 41 Sou. Rep. 684; 3rd McQuillan Municipal Corp. (2nd Ed.) p. 858; Mazet v. Pettsburg, 137 Pa. 548, 20 Atl. 693; Wells v. Burnham, 20 Wis. 112.

Accordingly, it has been generally recognized and held by the courts that it is the duty of public officers charged with the responsibility of letting contracts under the statute to adopt in advance of calling for bids, reasonably definite plans or specifications, as a basis on which bids may be received. Such officers, in view of such requirement, are without power to reserve in the plans or specifications so prepared in advance of the letting, the power to make exceptions, releases and modifications in the contract after it is let, which will afford opportunities for favoritism, whether any favoritism is actually practiced or not. Neither can they include other reservations which by their necessary effect, will render it impossible to make an exact comparison of bids. Clark v. Melson, 82 Fla. 230, 89 Sou. Rep. 495; Dillon Municipal Corp., Section 807, page 1211; 15 Corpus Juris 550; 19 R. C. L. 1070; 3 McQuillan on Municipal Corp. (2nd Ed.) pages 885-886.

In Clark v. Melson, *supra,* it was held in effect by this court, in affirming an order of the Circuit Court of Duval County, granting an injunction against payment of pub-

lic moneys upon a contract to purchase paint for bridges in the county, that purchases of county materials which the law required to be advertised for on competitive bids under our statutes, should be predicated upon *adequate* specifications which afford some reasonable basis for a comparison of bids, in order that bids, when received, might be truely competitive in character by having them applied to the same things.

The prayer for relief in the instant case is predicated upon the same argument that was successfully urged in the Duval County case just cited. We are, in consideration thereof, asked to declare that the present contract awarded to the Atlantic Shell Company is void, because of the failure of the Board of County Commissioners of Duval County to observe the requirements of the statutes in regard to competitive bidding, in the particulars specified in the bill of complaint.

That a contract made by public officers in violation of the statutes requiring them to be let pursuant to competitive bids, to the best responsible bidder, is absolutely void, and that no rights can be acquired thereunder by the contracting party, is beyond question in this jurisdiction. Lassiter Company v. Taylor, 99 Fla. 819, 128 Sou. Rep. 14. And that payments under such a contract will be enjoined at the suit of a citizen and taxpayer of the affected county, is also not to be denied under the decisions of this court. Anderson v. Fuller, 51 Fla. 380, 41 Sou. Rep. 684.

And, it has even been held that where illegal or void contracts have already been executed, and payments of money made by the public officers under them, that a suit in equity lies at the instance of a citizen and taxpayer to obtain an accounting and recover the payments back for the benefit of the public treasury, when no other remedy is available. See Russell vs. Tate, 52 Ark. 541, 13 S. W. 130, 20 Am. St. Rep. 193, 7 L. R. A. 180; Osburn vs. Stone, 170 Cal. 480, 150 Pac. 367; Mahoney vs. City and County

of San Francisco, 201 Cal. 248; 257 Pac. 49; Mines vs. Del Valle, 201 Cal. 273, 257 Pac. 530; Cathers vs. Moores, 78 Neb. 13, 110 N. W. 689, 14 L. R. A. (NS) 298; Neacy vs. Drew, 176 Wis. 348, 187 N. W. 218.

In the case at bar, no actual fraud or misconduct on the part of the County Commissioners is alleged. The theory is, that the contract awarded is absolutely void because violative of the statute, and that therefore it should be enjoined, because the specifications, being not in conformity with the statute as to certainty, the contract must fall with the insufficient specifications.

The notice (and specifications) upon which the contract was awarded, reads as follows:

"LEGAL NOTICES
BIDS WANTED

Notice is hereby given that the Board of County Commissioners of Duval County, Florida, will receive sealed bids until 10 o'clock A. M. on Saturday, August 1st, 1931, for furnishing approximately 50,000 cubic yards of clean, dredged or dead oyster shell, delivered at the various unloading points in Duval County, Florida. Bidders must state price per cubic yard f.o.b. lighters at point of delivery and alternate bids for shell loaded on county lighters at pit or point of loading, also alternate bids for shell unloaded on bank or dock from lighters at points of delivery also alternative bids for shell delivered f.o.b. cars at any of the delivery points having railroad facilities.

Bidders will be required to furnish the approximate weight per cubic yard of the shell proposed to be furnished and shall state source of supply and furnish a sample of the shell.

The successful bidder will be required to begin deliveries within ten days from the date of award and continue such deliveries promptly as directed by the County Purchasing agent.

A certified check in the sum of $200.00, drawn on a local bank and made payable to the Chairman of the Board of County Commissioners must accompany each bid as an evidence of good faith and guarantee that the

successful bidder will comply with the terms of bid and make deliveries at such times and in such quantities as directed by the County Purchasing Agent.

Address all bids to Board of County Commissioners, care of L. G. Hitchcolk, Clerk, Jacksonville, Florida. The Board reserves the right to reject any and all bids or to accept any bid as a whole or in part, with the understanding that the County reserves the right to order this shell delivered in such quantities at such delivery points and at such times as may be required. By order of the Board.

Wm. P. Belote, Chairman.''

The record shows that the shell wanted by the Commissioners was to consist of an available supply of that material amounting to 50,000 cubic yards as called for by the County authorities to be used for road repairing *from time to time as needed for that purpose.*

In the nature of things, considering the object and purpose of the contract to be made, it was within the discretion and judgment of the County Commissioners to so call for bids that the purpose, to be served by having a constant road repair material supply available at a fixed price for a stipulated maximum amount, could be appropriately accomplished.

And so long as the actual proposition *accepted* by the Board, was one which afforded a reasonable basis upon which all desiring to do so could have bid, or did bid, it cannot be said that the *resultant* award of a contract was so far absolutely void, as to be attacked and enjoined as a matter of course after it was made, at the suit of a citizen and taxpayer, who undertakes to show no resulting damage to himself, except such as may be said to constructively result to taxpayers generally from any substantive violation of the statutes requiring contracts to be let on competitive bids, when such contracts have been entered into by the Board in evasion or fraud of the statutory limitations.

The bid of Atlantic Shell Company, which was accepted,

was for shell at 61c per cubic yard f.o.b. county lighters at dredge. The record shows that at least two other firms submitted propositions for furnishing shell f. o. b. county lighters at dredge. In this connection, the bid of Jacksonville Sand Company was 64c per cubic yard, while that of Cleveland Johnson & Son was 73c per cubic yard. Duval Engineering & Contracting Company did not submit any bid on this basis. It is therefore obvious that of the three bidders who did submit bids for furnishing oyster shell f. o. b. county lighters at dredge, the bid of Atlantic Shell Company at 61c per cubic yard was lower than either of the other two bids of 64c and 73c per cubic yard, respectively.

In view of the fact that the contract had already been awarded to the Atlantic Shell Company under such circumstances, when the bill of complaint in the present case was filed, it is the duty of the court to indulge in all reasonable presumptions as to its regularity and validity, especially when the attack made is not on the ground of fraud, but because of alleged irregularities and uncertainties in the published proposals by means of which the contract was finally arrived at.

Therefore, if it be conceded that the county had no authority to reserve the right to order the shell delivered in such quantities and at such delivery points and at such times as might be required by the Board, the bids as finally accepted, and which now becomes the actual contract with the Board, is to the effect that the shell sold is to be purchased and paid for at 61c per cubic yard loaded on county lighters f. o. b. the Atlantic Shell Company's dredge, and not at such delivery points as the County Commissioners might designate.

And if it be further conceded that the County Commissioners would have gone beyond the scope of their lawful powers, if they had undertaken to accept any of the *alternative* bids called for in the published notice, this does

not necessarily mean that the Board exceeded its authority in asking for such alternative bids, if such request for alternative bids be construed as it might be construed, as a mere attempt on the Board's part to obtain thereby information through such alternative bids as to other feasible propositions which, upon being considered, might actuate the Board in rejecting all of the bids and re-advertising for other bids on some new basis, as the Commissioners expressly reserved the right to do.

In short, the proposition, is, the Board advertised for furnishing approximately 50,000 cubic yards of clean dredged or dead oyster shell. In pursuance to that advertisement three bidders, as hereinbefore stated, actually submitted bids, which were all submitted on exactly the same basis, and therefore capable of being compared, because they all provided for delivery on county lighters f. o. b. the company's dredge. All other propositions, alternative or otherwise, which *might* have been submitted in response to the published notice, were admittedly rejected by the Board. Hence, they become immaterial in the consideration of this case, when the effort is to enjoin payments under a contract which has already been awarded, and not an effort to enjoin the publication, or consideration, of improper proposals on the part of the County Commissioners as the basis for making awards. We are wholly in accord with the view of appellant that if it were duly shown that a clear violation of the statute relating to competitive bidding had been committed by the Board in letting the contract, that no allegation of actual fraud or misconduct on the part of the County Commissioners would be necessary in a case like this to warrant injunctive relief to a complaining taxpayer.

But it by no means follows that a competitively awarded contract must in every instance be set aside, and payments under it enjoined, at the suit of a citizen and taxpayer because of insufficient specifications embraced in

the advertisement for bids, where what has been done by the Board, appears to have been done as the result of a *bona fide* effort on the County Commissioners' part to comply with the statute, and no actual fraud, misconduct, favoritism, prejudice or discrimination is charged with reference to the transaction as completed.

In such cases the rule is, that where a contract has already been awarded, and the award appears to have been made in apparent good faith, in an honest effort to pursue the requirements of competitive bidding statutes, and it is not shown that the contract *as actually entered into* is to the public disadvantage in any way, nor that it has been entered into with unlawful or fraudulent intent on the part of the public officials letting it, the granting of an interlocutory injunction to restrain payments under such a contract to the contracting party, may rest within the sound discretion of the chancellor, dependent upon the equities involved.

Citizens and taxpayers, when suing as such, undoubtedly have the right to injunctive relief to protect the public treasury against illegal disbursements of public funds which it is charged will result from the carrying out of an unauthorized or illegal contract. And in such cases no other showing is required of complainant than that he allege his status as a citizen and taxpayer and point out that the threatened disbursement of public funds is for an unauthorized or illegal purpose, whether any actual fraud or misconduct was intended or contemplated thereby or not.

But it is also well settled that an injunction by a taxpayer will not be granted to restrain the exercise of discretionary powers of County Commissioners as to contracts and expenditures in the county where no fraud or corruption or unfair dealing is proved. Potts v. Court of Commrs., 203 Ala. 300, 82 Sou. Rep. 550; Parker v. Evening News Pub. Co., 54 Fla. 544, 45 Sou. Rep. 309.

In this case it was made to appear before the Circuit Court by the pleadings and affidavits in support thereof, that taking into consideration the subject matter of the contract, which the County Commissioners were endeavoring to make, that they were making an honest effort to follow the statute relating to competitive bidding.

It is not charged nor shown, that what the County Commissioners actually did, in entering into the contract with Atlantic Shell Company under the circumstances of this case, resulted from actual fraud or unfair dealing on the County Commissioners' part.

If the proposals for bids were illegal because too broad and indefinite, as contended by appellant, it nevertheless appears that the contract *made,* is the result of the acceptance by the Board of one out of three separate but similar bids offered by three different competing firms in response to the general proposal, and that considering these three bids in relation to each other, that the contract awarded has been let to the lowest bidder of the three.

What the Commissioners did in publishing the notice complained of, was a sufficient compliance with the purpose and intent of the competitive bidding statute. The bids received in response, were sufficient to afford a basis upon which the Commissioners could consider the acceptance of one of several bids offered, at least in the absence of any objection before the time of award, as to the form of the proposal as advertised by the Commissioners. Therefore the contract as made was not entirely void, nor wholly unauthorized under the law.

The failure of the County Commissioners to affirmatively determine on their minutes, that the bid of the Atlantic Shell Company was that of the lowest responsible bidder,— while an irregularity which would deprive the Atlantic Shell Company, in case of dispute, of the benefit *of such a finding by the Board of County Commissioners as evidence,*—does not go to the validity of the contract itself,

so long as there is sufficient evidence in the minutes and otherwise, before the court to show that such a determination would have been sustained, if made.

The present controversy falls within the rule that an injunction to a taxpayer will not be granted to restrain the exercise of discretionary powers of County Commissioners as to contracts and expenditures in the county, where no abuse of power, fraud, corruption or unfair dealing is proved.

The interlocutory injunction applied for was, therefore, properly denied, when it was affirmatively made to appear to the chancellor by the answer and affidavits in the case that the contract under attack was actually let by the County Commissioners pursuant to competitive bidding by a least three of the four bidders, and that no unfair dealing or disadvantage to the public was intended, nor any prejudice to the public interest actually resulted, from what has been done, in the way it was carried out.

For the reasons pointed out, the application here for an injunction in the nature of a supersedeas is denied and the interlocutory order appealed from is affirmed.

Affirmed.

WHITFIELD, P.J., AND TERRELL, J., concur.

BUFORD, C.J., AND ELLIS AND BROWN, J.J., concur in the opinion and judgment.