154 So.2d 859 (1963)
MAYES PRINTING COMPANY, Appellant,
v.
J.A. FLOWERS, Appellee.
No. E-119.
District Court of Appeal of Florida. First District.
June 11, 1963.
Rehearing Denied July 18, 1963.
*860 James E. Hertz of Fisher & Hepner, Pensacola, for appellant.
Beggs, Lane, Daniel, Middlebrooks & Gaines, Pensacola, for appellee.
STURGIS, Judge.
Mayes Printing Company, plaintiff below, appeals from a final decree which: (1) denied plaintiff's motion to strike the counter-claim and portions of the answer of the defendant (appellee) who appeared both in his official capacity as Clerk of the Circuit Court of Escambia County, Florida, and as a citizen and taxpayer of said county; (2) held that the original purchase by the county of a counter for use in the County Judge's office was in violation of Section 125.08, Florida Statutes, F.S.A., and that subsequent acts of the board of county commissioners of said county, whereby the same property was purportedly purchased from the plaintiff, was also in violation of said statute, and that consequently plaintiff was not entitled to a mandatory injunction requiring the defendant clerk to sign and deliver to plaintiff a county warrant for the purchase price; and (3) upon defendant's counter-claim required the plaintiff to pay into the public treasury of Escambia County, Florida, certain sums of money and interest thereon adjudged to be due from the plaintiff to Escambia County by reason of payments wrongfully made by the county to plaintiff incident to the original violation of the statute.
The complaint charges, in substance, that on August 7, 1962, the Board of County Commissioners of Escambia County lawfully accepted plaintiff's bid for the sale to the county of certain office equipment for use in the office of the County Judge, that plaintiff delivered and installed the same and the board of county commissioners authorized payment therefor, but that the defendant in his official capacity refused to sign and deliver a county warrant in payment thereof as required by law. On this predicate plaintiff prayed, inter alia: (1) that the court "determine the rights of the parties"; (2) "that the Court enjoin and restrain the Defendant in his official capacity from declining to sign the Warrant in payment to the Plaintiff"; and (3) "that the Defendant in his official capacity be enjoined and restrained from transfer[r]ing from the County budget, the amount of money necessary to satisfy Plaintiff's claim of indebtedness."
*861 The defendant by his answer admitted his refusal to sign the county warrant in payment of plaintiff's claim, denied that the county was lawfully indebted to the plaintiff as alleged, and denied that plaintiff had no other remedy than by this suit, but stated his willingness "for the Court to pass upon the legal questions appropriately presented in this proceeding." Further answering the complaint, defendant alleged that the advertising and bidding referred to in the complaint was the culmination of a long series of events affecting the official duties of the defendant in the premises, and set out the alleged facts forming the basis for his refusal to sign and deliver to plaintiff the warrant in payment of the alleged indebtedness of the county to the plaintiff. The established facts are substantially recited in the hereinafter quoted excerpt from the opinion of the chancellor upon which the decree appealed is based.
The defendant, on the basis of the facts alleged in his answer, also counter-claimed to require plaintiff to reimburse to the defendant certain payments said to have been improperly made in the premises.
On the day of the final hearing plaintiff moved to strike defendant's counter-claim and all parts of defendant's answer except that sounding in a general denial of the right to relief; and in support of the motion contended that the clerk of the circuit court has no discretion as to or control over the disbursement of county funds once payment has been approved by the board of county commissioners in the manner required by law. The effect of that argument was that the defendant in his official capacity as clerk of the circuit court is not a proper party to question the disbursement of the funds and that such right, if any, lies with a taxpayer. At this point defendant was permitted to amend his pleadings instanter so as to appear as a citizen and taxpayer as well as in his official capacity.
In a memorandum opinion, the chancellor commented as follows upon plaintiff's said motion to strike:
"* * * the county commissioners as constitutional officers (Article VIII, Section 5) manage the fiscal affairs of the county, subject to statutory authority. Their powers include approval of `all accounts' against the county. (Section 125.01[12], Florida Statutes [F.S.A.]), and the budgeting of county funds (Chapter 129, Florida Statutes [F.S.A.]). Likewise, the Florida Constitution [F.S.A.] creates the office of Clerk of the Circuit Court and makes him `ex-officio auditor of the county' (Article V, Section 6[7]). The Clerk is also the `accountant' of the Board. (Section 125.17, Florida Statutes [F.S.A.]).
"The thrust of the plaintiff's argument is that the Clerk is a mere figurehead and consequently when appropriate approval is placed upon a claim against the county by the Board, the Clerk has no alternative, once he has determined the claim's arithmetic correctness, but to issue the warrant and to affix his signature.
"Implicit in the word `auditor' itself is that some responsibility shall attach to inquire into the legality of the claim. Be that as it may, to follow the argument of the plaintiff would be to completely disregard the provisions of Section 129.08 and Section 129.09, Florida Statutes [F.S.A.]. The former pertains to the responsibility of county commissioners incurring an indebtedness or paying a claim not authorized by law. The latter statute makes the clerk as county auditor who signs a warrant `to pay any illegal charge against the county, or to pay any claim against the county not authorized by law * * * personally liable for such amount * * *' and guilty of a misdemeanor.
"The Court therefore concludes that the Clerk of the Circuit Court does exercise a discretion pertaining to the expenditure of county funds and may *862 properly in his official capacity seek a determination of the validity of the claim in controversy."
The conclusion of the chancellor is approved and adopted.
We pause here to note that while the defendant did not object to this suit on the ground that it is an improper procedure for the relief sought, appellee's brief correctly states that this proceeding is the equivalent of a suit in mandamus. This opinion is not to be construed as approving substitution of the procedure comprehended by Chapter 87, Florida Statutes, F.S.A., for the traditional proceeding in mandamus as a means to coerce public officials in the performance of their official duties. In a general sense every judgment or decree is declaratory of the rights of litigants. The special objectives of Chapter 87 should not be perverted by permitting it to be used as a catch-all for any type of proceeding at law or in equity. It is only because the parties and the trial court have adhered substantially to the same procedure and principles that on the facts would govern a proceeding in mandamus that we feel obliged to indulge the irregular procedure here followed.
The pertinent facts upon which the merits of the cause were decided, as stated in a memorandum opinion of the chancellor, are as follows:
In June 1961 the plaintiff, a dealer in office equipment, having negotiated with the County Judge of Escambia County concerning his desire to have installed in his office a counter containing three sections, placed an order therefor with the manufacturer. The invoice of the manufacturer to the plaintiff described the purchase as: "1 special counter approx. 25'4" long." The cost to the county of the counter and certain desk backs, as arranged by plaintiff's transaction with the County Judge, was $3,058.00. Plaintiff received the counter in September 1961 and installed one section of it in the County Judge's office, whereupon a county purchase order of $990.00 was approved for a 10-foot section of the counter. Several days later the other two sections were installed. Payment of said $990.00 item was made in September 1961. On October 29, 1961, plaintiff's further invoice for $930.00 covering a 9 1/2 foot section of the counter was approved, together with plaintiff's further invoice for $148.00 covering desk backs for said office, and these invoices totaling $1,078.00 were paid by county warrant dated November 28, 1961.
On December 21, 1961, a county purchase order in plaintiff's favor issued for $990.00 and was followed by plaintiff's invoice in a like sum dated January 8, 1962, for a 10-foot section of the counter. Payment of this item would have completed the total purchase price of $3,058.00 pursuant to plaintiff's negotiations with the County Judge.
At this point the defendant clerk of the circuit court first became aware that the three sections of the counter were included in a single order, and based on Section 125.08, Florida Statutes, F.S.A., refused to issue the warrant for the final payment of $990.00. The statute provides in pertinent part that no contract shall be let by the board of county commissioners for the purchase of materials for county use when the amount to be paid therefor shall exceed one thousand dollars unless notice thereof shall be advertised once each week for at least two weeks in a newspaper of general circulation in the county, calling for bids upon the materials to be purchased, "and in each such case the bid of the lowest responsible bidder shall be accepted, unless the county rejects all bids because the same are too high."
There is no indication that the county commissioners had any knowledge of the details of plaintiff's transaction with the County Judge until it was questioned by the defendant clerk. Because of defendant's objections, the board of county commissioners agreed to advertise for bids for the *863 counters, with the understanding that if the plaintiff was not the successful bidder, the counters installed by plaintiff would be removed and plaintiff would refund the amounts previously paid. Following such advertisement three bids were received on July 10, 1962, but all were rejected; and the board then ordered re-advertisement for bids, with new specifications to include doors, backs, and rounded edges for the counters. At the instruction of the board, specifications for the bid proposals were then prepared by the county engineer from the blueprints covering plaintiff's initial order from the manufacturer, The General Fireproofing Co. The only difference between the specifications in the first and second invitations for bids was that the latter added a requirement for swinging gates and rolled edges on the counter. Pursuant to the second invitation two bids were received on August 7, 1962, one from the plaintiff in the amount of $2,830.00 and one from another in the amount of $2,226.10. The board rejected the lower bid as not meeting the specifications and accepted plaintiff's bid. The defendant then declined to sign a county warrant for the unpaid balance claimed by plaintiff "because of the wide variance between the higher bid * * and the lower bid," and plaintiff brought this suit to mandatorily require defendant to sign and deliver the same.
The questions presented by this appeal are:
(1) Whether the clerk of the circuit court, as ex-officio auditor of the county, had the authority to refuse to sign and deliver the subject county warrant. We answer this question in the affirmative.
(2) Whether the circuit court, as a predicate to entry of the decree appealed, was required formally to make a specific finding that the board of county commissioners abused its lawful discretion, was guilty of fraud, or violated the law in some manner. We answer in the negative
The chancellor's memorandum opinion upon which the final decree is based correctly states the facts and applicable law:
"Had a single invoice covering the entire purchase in the original sum of $3,058.00 been submitted for approval, audit and payment, no doubt the question of the propriety of the purchase would have been immediately apparent. Inquiry could have been made concerning the advertisement for competitive bids as required by law. However, the plaintiff installed the counters one at a time but within a space of two or three days, and submitted a separate invoice or claim for each section yet no claim exceeded $1,000.00. The Attorney General has held in construing Section 125.08, Florida Statutes [F.S.A.], that a county may not properly purchase goods in excess of the statutory maximum when ordered and shipped on a series of orders, each less than the maximum fixed by the competitive bidding statute. (AGO 1949-50, page 187). (See also: Armco Drainage and Metal Products, Inc. vs. County of Pinellas [2d Dist. Ct. of Appeal], 137 So.2d 234). In other words, invoices for purchases may not be split and the statute thus avoided. Were it otherwise, evasion of competitive bidding would be possible with complete impunity. Competitive bidding statutes are remedial in character and should be construed so as to give effect to their true intent and avoid the likelihood of their being circumvented. (Wester vs. Belote, [103 Fla. 976] 138 So. 721). Regardless of good faith or honest intent of the transaction now before the Court, the Court finds that the purchase order in legal effect exceeded the $1,000.00 statutory limit without compliance with Section 125.08, Florida Statutes [F.S.A.]. Therefore the result of splitting the invoice is to contravene the requirements of law. Non-compliance with the statute *864 renders the contract absolutely void. (Wester vs. Belote, supra; Robinson's Inc. vs. Short * * * [Fla. [App.], 146 So.2d 108]).
"Having reached this conclusion we pass on to the remedial procedure attempted by the county commissioners. Obviously the Board was faced with an awkward situation since the equipment had been in use for several months. Apparently these counters were preferred by the County Judge because they matched other furniture in his office.
"Three bids were received from the first invitation which did not specify rounded edges * * *. The plaintiff was high bidder in dollars and cents amounting to $3,058.00, while the low bid was that of Wiggins Office and Supply Company, in the sum of $2,226.10.
"The County Judge recommended the plaintiff's bid while the County Engineer recommended the low bid. However, all bids were rejected and the County Engineer was instructed to draw new specifications, `including doors, backs,' and `rounded edges.' The final specifications required `all exposed edges of the counter shall be a rolled edge with a radius of approximately 1/2 inch.' * * * The description exactly fitted the counters then installed in the office. In addition, the blueprints were the same as those by which the counters were originally manufactured. As a result of this invitation only two bids were received, one from the plaintiff which reduced its bid to $2,830.00 and eliminated its profit, * * * and the second bid of Wiggins Office and Supply Company in the sum of $2,226.10 * * *. The low bidder pointed out in its bid, `* * * we meet specifications in every respect except the rounded corners as shown in General Fireproofing Specifications or drawings * * *.'
"Public officers have a discretion in the awarding of contracts, yet that discretion may not be exercised arbitrarily or capriciously. Public agencies are not required to accept the lowest dollar-and-cents bid as the `lowest responsible bid' in every case. However, if the award is made to one other than to the lowest bidder it must be based upon facts which reasonably support the conclusion. Usually a Court will not interfere with the award made to other than the low bid where the public agency acts in good faith even though the decision may seem erroneous to some persons. (Culpepper vs. Moore et al., [Fla. 1949] 40 So.2d 366). (See also: Eggart vs. Westmark, [Fla. 1950] 45 So.2d 505).
"In light of the pronouncements of the Supreme Court the case would not be too difficult if initally bids had been invited and the county commissioners in their discretion concluded that the `rounded edge' counter was better suited for the needs of the particular office, and the facts upon which the award was made reasonably supported the conclusion. But that is not the case; in fact, the cover sheet attached to the specifications show a particular piece of equipment was intended. In addition, bidders were advised that the Board intended to purchase a counter substantially its equal.
"The law is clear that competitive bidding statutes are designed to secure fair competition on equal terms for all bidders, among other things to avoid favoritism and to secure public improvements at the lowest reasonable cost to the taxpayers. (26 Fla. Jur., Public Works and Contracts, § 14).
"At the request of counsel for the respective parties, the Court has inspected the subject matter of this litigation * * *. The radius of the rolled edge is greater than that of the sample submitted by the low bidder at the final *865 hearing of this cause * * *. It was for that reason that the lower bid was rejected. The background of negotiations can lead the Court but to conclude that the specifications were so designed as to exclude any bidder other than the plaintiff. The County Engineer had the opinion that the low bid substantially met specifications except possibly the rolled edge and recommended its acceptance. The acceptance of the higher bid increased the cost by better than 25%. The Court therefore finds that the attempted compliance with Section 125.08, Florida Statutes, was not such as to breathe legality into the void contract and the plaintiff is not entitled to the relief prayed for in its complaint.
"This leaves only the disposition of the defendant's counter-claim, by which he seeks to require the plaintiff to refund to the county the sum of $2,068.00 [sic] paid to it on account.
"There is a long line of decisions of the appellate courts of this state to the effect that a taxpayer may enjoin the expenditure of public moneys, with respect to an illegal contract. (Robinson Inc. vs. Short, supra; Robert G. Lassiter & Co. vs. Taylor, [99 Fla. 819] 128 So. 14 [69 A.L.R. 689]; Wester vs. Belote, supra). There is also authority that where a public contract is let in violation of law, a citizen and taxpayer may sue in equity for an accounting and recover back for the benefit of the public treasury money paid pursuant to the void contract. The Court therefore concludes that the defendant may not in his official capacity as Clerk recover for the benefit of the public treasury the sums paid to the plaintiff. However, the defendant at the final hearing requested that he be permitted to amend his pleadings so that he appear as a taxpayer in the event the Court concluded he has no legal right in his official capacity. In view of the conclusion reached, the defendant is permitted to amend his pleadings instanter so as to appear as a citizen and taxpayer as well as in his official capacity.
"Should the defendant so elect, the Court will then grant the prayer of the counter-claim. As was commented upon in the case of Town of Boca Raton vs. Raulerson, [108 Fla. 376] 146 So. 576, where the Court permitted the town to recover the full amount paid under a void contract, the rule may seem a harsh one; however, the result of the rule is a warning that those who deal with public agencies act at their own peril since they are presumed to know the law."
The clear import of the conclusion stated by the chancellor in said opinion and projected by the final decree is that the board of county commissioners abused the discretion vested in them by awarding the contract to the plaintiff under the peculiar facts and circumstances of this case; otherwise stated, that the transactions which took place subsequent to the refusal of the defendant clerk to pay the final $990.00 voucher submitted by plaintiff in furtherance of its original transaction with the County Judge, which was clearly in violation of the statute, was in effect an attempt to "breathe legality into the void contract."
Where the specifications are drawn in such manner that it would permit only one bidder to qualify, it is a violation of the statute. Robinson's, Inc. v. Short, 146 So.2d 108 (Fla.App. 1962). In the cited case, as in the case on appeal, there was no evidence of actual fraud or misconduct.
We described the transaction involved in Robinson's, Inc. v. Short, supra, as "a quality of product favoritism" that "does not have the taint of corruption but is another illustration that there must be no profit in even good faith transactions that are not in strict compliance with the law." There, as in this case, we relied on the landmark *866 case of Wester v. Belote, 103 Fla. 976, 138 So. 721, 724, where the Florida Supreme Court in referring to the competitive bidding statutes said:
"In so far as they thus serve the object of protecting the public against collusive contracts and prevent favoritism toward contractors by public officials and tend to secure fair competition upon equal terms to all bidders, they remove temptation on the part of public officers to seek private gain at the taxpayers' expense, are of highly remedial character, and should receive a construction always which will fully effectuate and advance their true intent and purpose and which will avoid the likelihood of same being circumvented, evaded, or defeated."
Finding no error in the decree appealed, the same is
Affirmed.
CARROLL, DONALD, K., C.J., and WIGGINTON, J., concur.