QUESTION: May the clerk of the circuit court acting in his capacity as county auditor require a community mental health facility established and operated under the Community Mental Health Act to disclose the names and addresses of patients who are residents of the county, in the absence of consent of patients or court order, so as to justify payments by the board of county commissioners to such facility?
SUMMARY: A community mental health facility established and operating under the Community Mental Health Act (part IV, Ch. 394, F. S.) is prohibited by the terms of s. 394.459 from releasing to the clerk of the circuit court, acting as county auditor, any part of a patient's clinical record, including the patient's name and address or other identifying information, except when consent has been properly given by the patient and/or the guardian, attorney, or designated representative for the patient or upon court order. Section 394.459 does not prohibit the release of other information from records maintained by the center (such as the total number of patients who are residents of the particular county, number of patients from that county admitted or discharged within a given period, the number of patients who are residents of another county or counties, the total number of all patients, etc.) and other records relating to budgeting and finances and operating costs of the mental health center, and such public records (other than the clinical records) are subject to public inspection pursuant to the Public Records Law (Ch. 119, F. S.). Your question is answered in the negative. According to your letter, the Lake/Sumter Mental Health Center has refused to release the names and addresses of Sumter County patients who are served by the center, asserting that such disclosure is prohibited by the Florida Mental Health Act (part I, Ch. 394, F. S.). Due to the center's refusal to divulge the requested information, the Clerk of the Circuit Court in Sumter County, acting in his capacity as county auditor, has maintained he cannot make payments to the center as authorized under the Community Mental Health Act (part IV, Ch. 394, F. S.), as without such information he cannot determine whether each bill presented is a valid county obligation. The Lake/Sumter Mental Health Center is a community mental health facility operating under the Community Mental Health Act. This act establishes a system of locally administered and controlled community mental health services under the supervision of the state by the Department of Health and Rehabilitative Services. Section394.66(1) and (7), F. S. The community mental health programs so established are to be integrated with state-operated programs into a unified mental health system. Section 394.66(3). The community mental health programs are to be conducted within service districts designated by the Department of Health and Rehabilitative Services. Section 394.68, F. S. In addition, the department has established board districts administered by a mental health board, which may include one or more service districts. Section 394.67(11), F. S. The Lake/Sumter Mental Health Center provides service to a service district composed of Lake and Sumter Counties. The board district also consists of both counties and is under the jurisdiction of a district mental health board. See Rule 10E-1.04, F.A.C. The district mental health boards are appointed by the governing body or bodies of the county or counties having jurisdiction in the board district. Sections 364.67(2) and 394.70, F. S. The Department of Health and Rehabilitative Services is authorized to contract with the district boards to provide for, and be provided with, mental health services and facilities. Section 394.457(3), F. S. In addition, the county or counties within a board district possess the same power as the department to contract with the mental health board for mental health services. Section 394.73(1), F. S. Section 394.73(3) states that "two or more counties within a board district may enter into agreements with each other for the establishment of joint mental health programs." The financing of the community mental health services is based upon a uniform ratio of state government responsibility and local participation. Section 394.66(5), F. S. The state share of financial participation is 75 percent of the total operating costs less the following: Nonreimbursable expenses as specified in s. 394.75(3), F. S.; federal grants, excluding funds earned under Titles IV-A and VI of the Social Security Act; inpatient and third-party payments for which reimbursement has been requested from the state; and three-quarters of all other noninpatient fees excluding funds earned under Titles IV-A and VI of the Social Security Act. Section 394.76(8), F. S. Operating and capital outlay costs of community mental health programs which are not funded by the state or federal government may be financed by local matching funds. Section 394.76(8), F. S. "Local matching funds," as used in the Community Mental Health Act (part IV, Ch. 394, F. S.), means: . . . funds received from governing bodies of local government, including city commissions, county commissions, district school boards, special tax districts, private hospital funds, private gifts, both individual and corporate, and bequests and funds received from community drives or any other sources. [Section394.67(8), F. S.] The Department of Health and Rehabilitative Services has further defined "local matching funds" to mean: Funds from any local source excluding State and Federal Funds, all inpatient fees for which reimbursement has been requested from the State, and three-fourths (3/4) of all other patient fees. [Rule 10E-1.07(2), F.A.C.] Counties are specifically authorized to appropriate funds to support all or any portion of the costs of services and construction not met through support of the state or federal governments. Section 394.80, F. S. See also ss. 394.453;394.455(8), (9), (10), and (11); 394.67(7) and (8); 394.71(2);394.73(2) and (3); 394.74(1) and (2); and 394.75, F. S.
However, neither the Community Mental Health Act nor the rules promulgated by the Department of Health and Rehabilitative Services establish clear guidelines as to the manner in which local funds are to be received and disbursed or as to what information a mental health center is required to divulge to the governing body of the county or counties within a board district as a condition to receipt of local funds. The district mental health board is required to prepare a budget and to "receive and disburse such funds as are entrusted to it by law or otherwise, including funds from both private and public sources." Section 394.71(2), F. S. In addition, the board is required to report to the governing body of the county as to a program of community mental health services and to submit an annual report to the county governing body. Section 394.71(4), F. S. Likewise, where a board district comprises two or more counties, the board is required to submit, prior to the budget submission date of each governing body of the affected counties, an estimate of the proportionate share of costs of mental health services to be borne by each governing body. A rule promulgated by the Department of Health and Rehabilitative Services states that the manner in which local funds, both public and private, are received shall be determined jointly by the district board and the various funding sources within the board district. Rule 10E-1.07(2), F.A.C. It is clear, therefore, that the Legislature intended that county payments of local matching funds should be received in accordance with procedures set forth in agreements between the district mental health board and the county commission. See s. 394.73(2), F. S. In an informal advisory opinion to Harry A. Johnston, II, Attorney for the Clerk of the Circuit Court of Palm Beach County, November 22, 1971, supplemented by letter to John B. Dunkle, Clerk of Circuit Court of Palm Beach County, December 16, 1971, I concluded that monthly payments to a community mental health center based upon an agreement limiting the county's share to an agreed-upon percentage of the operating and capital expenses of the center and requiring monthly requisitions to be accompanied by a certified copy of the previous month's list of payroll warrants and warrants for operating expenses were not unauthorized "lump sum" payments and could be made by the county after a review by the clerk, as county auditor, of such certified list of payroll warrants and warrants for operating expenses submitted to him with the monthly requisitions. The information to be supplied the governing body of a county seeking to make payments pursuant to the Community Mental Health Act for mental health services or construction could, and should, also be worked out by agreement. In specific regard as to whether a clerk may require a community mental health center to release the names and addresses of the county patients served there, reference must be made to the Florida Mental Health Act (part I, Ch. 394, F. S.). The Florida Mental Health Act establishes a "Bill of Rights" for patients suffering from, and being treated for, mental illness. Section394.459, F. S. One of the rights guaranteed to any patient receiving treatment in a community mental health facility is the right to the confidentiality of his or her clinical record. Section 394.459(9). This section states: A clinical record for each patient shall be maintained. The record shall include data pertaining to admission and such other information as may be required under regulations of the department. Unless waived by the patient or his guardian or attorney, the privileged and confidential status of the clinical record shall not be lost by either authorized or unauthorized disclosure to any person, organization, or agency. The clinical record shall not be a public record and no part of it shall be released, except: (a) The record may be released to physicians, attorneys, and government agencies as designated by the patient, his guardian or his attorney. (b) The record shall be produced in response to a subpoena or released to persons authorized by order of court, excluding matters privileged by other provisions of law. (c) The record or any part thereof may be disclosed to a qualified researcher, a staff member of the facility, or an employee of the department when the administrator of the facility or secretary of the department deems it necessary for treatment of the patient, maintenance of adequate records, compilation of treatment data, or evaluation of programs. (d) Information from the clinical records may be used for statistical and research purposes if the information is abstracted in such a way as to protect the identity of individuals. A county clerk is not among those authorized to receive information under any of the exceptions listed above. Hence, a community mental health facility as defined in s. 394.455(10), F. S., is prohibited from releasing a patient's clinical record or any part thereof to a county clerk absent the patient's consent or court order. Part I of Ch. 394, F. S., does not expressly state whether or not a patient's name and address are part of his or her clinical record, but s. 394.459(9)(d) implicitly does by prohibiting the release of any information from the clinical record which identifies individuals or patients. "Clinical record" is defined by s.394.455(23): "Clinical record" means all parts of the record required to be maintained and includes all medical records, progress notes, charts, admission and discharge data, and all other information recorded by a facility which pertains to the patient's hospitalization and treatment. In addition, s. 354.459(9) requires a clinical record to be maintained for each patient and provides that the clinical record shall include "data pertaining to admission and such other information as may be required under regulations of the department [of health and rehabilitative services]." Pursuant to this delegation of authority, the Department of Health and Rehabilitative Services promulgated the following rule defining "clinical record": "Clinical record" means all parts of the patients' records required to be maintained by a receiving and treatment facility including all medical records, progress reports, charts, admission data, discharge data, court orders, hospitalization certificates, law enforcement officers' written reports, and physician certificates, as well as all other information recorded by a receiving or treatment facility which pertains to the patients' admission, designation of representatives, diagnosis, hospitalization, treatment, and release. [State Mental Health Regs., Ch. 10E-2.01(11)] I am of the opinion that data pertaining to admission and release or designation of representatives which is part of the clinical record (as defined above) which the statute requires to be maintained for each patient includes the names and addresses and all other identifying information of the individual patients. This conclusion is buttressed by the clear intent of the Legislature to insure the patient's right to confidentiality. Obviously, if community mental health facilities were authorized to release information as to a patient's identity, a large part of this confidentiality would be lost. In determining that a patient's clinical record includes his or her name and address and other identifying information and that, therefore, such information may not be disclosed to the clerk in the absence of the patient's consent or court order, I am not unmindful of the constitutional and statutory preauditing duties of the clerk of the circuit court. Section 1(d), Art. VIII, of the State Constitution in pertinent part reads: When not otherwise provided by county charter or special law approved by the vote of the electors, the clerk of the circuit court shall be ex officio clerk of the board of county commissioners, auditor, recorder and custodian of all county funds. [Also see ss. 28.101 and 125.17, F. S.] In addition, s. 129.08, F. S., prohibits the board of county commissioners from incurring any unlawful expenses. Section129.09, F. S., imposes personal liability upon the clerk of the circuit court, acting as auditor, when the clerk signs any warrant for the payment of any unlawful claim. Mayes Printing Co. v. Flowers, 154 So.2d 859 (Fla. 1963). It is clear, however, that counties are expressly authorized by law to appropriate funds to support all or any portion of the costs of services furnished by community mental health facilities established and operating under part IV of Ch. 394, F. S. Sections 394.66 and 394.80. See also ss.394.453; 394.455(8), (9), (10), and (11); 394.67(7) and (8);394.73(2) and (3); 394.74(1) and (2); and 394.75(2)(b)1. and (c)1. It is important to note that only the patient's clinical record is privileged under s. 394.59(9), F. S.; Rule 10E-2.01, F.A.C.; the statute does not prohibit the disclosure of other records of the community mental health facility. In fact, when such mental health facility is created by law or acting on behalf of a public agency, its records, unless exempted by law, are open to the public pursuant to the Public Records Law; see ss. 119.011(1) and (2) and119.07, F. S. Therefore, I am of the opinion that information may be released regarding, for example, the total number of patients who are residents of the particular county, number of patients from that county admitted or discharged within a given period, the total number of patients who are residents of another county or counties, the total number of all patients, etc., as well as other records related to the finances and operating costs of the center (which may be incorporated in any of the s. 394.73(3), F. S., agreements; the s. 394.74 annual district plan; the s. 394.71(1) and (4), budget data; or the ss. 394.73-394.77 records).