Dear Mr. Lapp:
On behalf of the Hendry County Board of County Commissioners, you ask substantially the following questions:
1. May Hendry County sell its county-owned airport to a private party?
2. If so, must it sell the property using the competitive process prescribed in Chapter 125, Florida Statutes?
In sum:
1. Hendry County is authorized to sell the county-owned airport to a private party if the county commission makes a determination that the county no longer needs the property for aeronautic purposes. While such a determination apparently would trigger the reverter clause applicable to the property, it has been represented to this office that the federal government will consent to the transfer of the property and not enforce the reverter clause.
2. In light of the federal government's consent to the transfer of the airport property and waiver of the reverter clause, the county must follow the competitive process prescribed in section 125.35, Florida Statutes, in selling the county airport.
You state that Hendry County owns and operates Airglades Airport, a parcel of 2,560 acres formerly owned and used by the United States government as a military base. Pursuant to the Federal Aviation Administration's Airport Privatization Pilot Program, authorized under 49 United States Code section 4713, the county wishes to sell or lease the property to a private entity for development of the airport as an "air cargo trans-shipment center." The program allows government-owned airports to be sold or leased to the private sector. You indicate that the county obtained the property from the State of Florida, which had received it from the United States government in 1948. The deed transferring the property to the state reflects that the land was being conveyed for public airport purposes and contains a reverter clause should the property cease to be used for anything other than airport purposes without the consent of the United States government. In further communications with this office you have indicated that the federal government will consent to the transfer of the airport property to a private entity and, therefore, waive enforcement of the reverter clause.
No comment is expressed herein regarding the terms of the original deed to the State of Florida or the implications of federal law on the transfer of the property.
Question One
Pursuant to section 332.08, Florida Statutes, a county[1]
may lease airport property to private parties for operation and lease or assign to private parties a space, area, improvement, or equipment on such airport for a limited period and for use consistent with the act.[2] The statute further authorizes a county to sell any part of such airport to any municipal or state government or the United States for aeronautical purposes.[3] Section 332.08(4), Florida Statutes, however, speaks specifically to the authority of a county to sell or lease airport property "which, in the judgment of its governing body, may not be required for aeronautic purposes[.]"
Thus, it would appear that the provisions in section 332.08, Florida Statute, limit a county's authority to sell part of its airport property for aeronautical purposes only to another municipality (county), the state government, or the United States, but imposes the requirement that the sale of the entire airport, without regard to whether the buyer is public or private, be conditioned upon a finding by the county's governing body that the airport property is no longer required for aeronautical purposes.
You have cited two previous opinions of this office to assert that the provisions in Chapter 125, Florida Statutes, governing the disposition of property by a county would control the sale of airport property by the county, since pertinent provisions in Chapter 125[4] were enacted later in time than section 332.08, Florida Statutes. Both opinions, however, consider the ability of a county to enter into a lease for the non-aviation portion of an airport to a private developer.
In Attorney General Opinion 94-96, this office was asked whether a county commission was authorized to grant a lease in excess of 30 years to a private party for the purpose of operating and developing the non-airfield portion of a county airport. The opinion contrasted section 332.08(3), Florida Statutes, limiting the lease of airport property to a period not exceeding 30 years, with section 125.35, Florida Statutes, authorizing the lease of airport property for any period a county commission deems appropriate when such action is in the best interest of the county and the improved, leasehold has an appraised value in excess of $20 million. As the later in time and more specific to the lease of airport property and facilities under specified conditions, section 125.35, Florida Statutes, was found to authorize the county to lease county airport property for a term determined by the commission to be in the best interest of the county. It was concluded that pursuant to section 125.35, Florida Statutes, the county was authorized to grant a lease in excess of 30 years to a private party for the operation and development of the non-airport portion of the county airport. The opinion stressed, however, that the factors set forth in the statute must be met, that is, the county commission must determine that such a lease is in the best interest of the county, it must be an airport operation or facility lease, and the improved leasehold must have an appraised value in excess of $20 million.
Subsequently, this office was presented with the question of whether a county could lease the non-aviation portion of an airport site to a private developer without competitive bid. In Attorney General Opinion 99-35, it was noted that the provisions in section 125.35, Florida Statutes, were amended in 1999 to clarify that counties are authorized to negotiate the lease of airport and seaport facilities.[5] As the later in time and more specific to the leasing of airport property, the provision in section 125.35, Florida Statutes, was found to control. The opinion concluded, therefore, that counties are not required to use a competitive bidding procedure for the lease of the county's airport facility and that pursuant to section 125.35, Florida Statutes, such a lease may be granted for a term in excess of 30 years.
There is a distinction, however, between the leasing of airport property and the sale of such property. When the Legislature in 1999 clarified local governments' authority relating to the lease of airport property under Chapter 125, Florida Statutes, and exempted such leasing from the competitive bid requirements of the act, it could easily have addressed the sale of airport property also.[6]
The Legislature did not do so. This office cannot add language where the Legislature has chosen to remain silent, nor may it extend the reach of Chapter 125, Florida Statutes, to the sale of airport property when there are specific provisions in section 332.08, Florida Statutes, governing such transactions.[7] The conclusions in Attorney General Opinions 94-96 and 99-35 are based upon application of the rule of statutory construction that legislation later in time controls. Such rationale may not be applied to the sale of airport property, since the more specific provisions relating to the sale of airport property are located in section 332.08, Florida Statutes.[8]
Section 332.08, Florida Statutes, speaks specifically to the sale of airport property and constitutes the Legislature's direction as to the manner in which such a sale will be accomplished.[9] As noted above, subsection (3) of the statute, authorizes the sale of airport property for aeronautical purposes to public entities. Subsection (4) authorizes the sale of such property when the county no longer needs the property for aeronautical purposes, without restriction as to whether the purchaser is a public or private entity.
Section 332.08, Florida Statutes, was enacted prior to sections 125.35 and 125.39, Florida Statutes.[10] There is no indication that the more specific provisions in section 332.08 relating to the sale of airport property by a county, however, were amended or repealed by the enactment of the later statutes governing the general purchase or sale of county property.[11] The more specific terms of section 332.08, Florida Statutes, would control over the general grant of authority to purchase and dispose of real property in Chapter 125, Florida Statutes.
Accordingly, it is my opinion that section 332.08(4), Florida Statutes, authorizes the county to sell its county-owned airport to a private party when the governing body of the county has determined that the county no longer needs the property for airport purposes. Such a determination in this instance, however, would according to your letter trigger the reverter clause in the original deed transferring ownership of the property from the United States government. You have advised this office, however, that the federal government consents to the sale of the property to a private entity, thereby waiving operation of the reverter clause.
Question Two
Generally, a board of county commissioners is authorized to sell or convey any real or personal property and to lease real property to the highest and best bidder when the board determines that it would be in the county's best interest.[12] The statutes governing such disposition, however, specifically exempt the lease of an airport from the competitive bidding and best interest requirements.[13]
Section 125.39, Florida Statutes, further creates an exception from the general competitive bidding provisions in Chapter 125, Florida Statutes, governing the disposition of real and personal property as follows:
"The provisions of this law shall not be construed to cover the sale or disposition of any land conveyed to any county for a specific purpose and containing a reversionary clause whereby said land shall revert to the grantor or grantors upon failure to use said real property for such purpose."
This section originated during the 1947 Legislative Session in the same act as the general provisions governing the sale or disposition of property by competitive bid in section 125.35, Florida Statutes.[14] The section originally included an exemption for the sale or disposition of lands acquired by the county for delinquent taxes.[15] The portion relating to the disposition of lands acquired for delinquent taxes was deleted in 1973, at the same time that section 197.302, Florida Statutes, [16] was amended to cover such lands.[17]
The only Florida court considering the effect of section 125.39, Florida Statutes, on the transfer of county-owned property subject to a reversion clause found the exemption "clear on its face, and intended to apply only in limitedcircumstances."[18] (e.s.) The court stated that "[a]s long as a conveyance to the county includes a valid special purpose and reverter clause, the competitive bidding requirements do not apply to county dispositions."[19]
While there is no available legislative history explaining the exemptions created in 1947 by section 125.39, Florida Statutes, the title to the act states that it is:
"AN ACT Relating to the Disposition of Real and Personal Property Belonging to Any County in the State of Florida Not Needed forCounty Purposes by the Board of County Commissioners and Providing for the Procedure in Making Any Sale or Lease Thereof and Limiting the Application of This Act."[20] (e.s.)
This clear intent in the title premises the exercise of the county's authority to dispose of real and personal property upon the fact that the property is no longer needed for county purposes. A logical interpretation of section 125.39, Florida Statutes, therefore, is that disposition of property subject to a reverter clause is controlled by the reverter clause since the property is no longer needed for county purposes, i.e., the particular use under which the county assumed ownership of the property. There would be no need for competitive bidding when by the terms of the deed the property is returned to the grantor when the county no longer needs the property for such use. In this instance, as discussed in Question One, the disposition of the airport property by the county is dependent upon the county's determination that the property is no longer needed by the county.
You assert that since the airport property is subject to a reverter clause, the competitive bidding requirements in section 125.35, Florida Statutes, do not apply and the county is allowed to sell the airport property pursuant to the general expression of a county's authority to sell or exchange real or personal property recognized in section 125.01(3), Florida Statutes. In light of the discussion in Question One, this would presume that the reverter clause is not triggered by the disposition of the property. This office does not interpret contracts and deeds, nor may it make a factual determination of whether the sale of the property to a private entity constitutes the continued use of the property for a public airport. Nevertheless, the mere presence of a reverter clause would not appear to be sufficient to exempt the sale or disposition of property from competitive bidding requirements in section 125.35, Florida Statutes. The exemption in section 125.39, Florida Statutes, simply recognizes that property subject to a reverter clause which is determined to be no longer needed for county purposes would revert to the grantor. No competitive bidding would be needed or required in such circumstances.
The courts of this state have recognized that competitive bidding protects the public's interest. As stated in Wester v.Belote, [21] competitive bidding laws
"serve the object of protecting the public against collusive contracts and prevent favoritism toward contractors by public officials and tend to secure fair competition upon equal terms to all bidders, they remove temptation on the part of public officers to seek private gain at the taxpayers' expense, are of highly remedial character, and should receive a construction always which will fully effectuate and advance their true intent and purpose and which will avoid the likelihood of same being circumvented, evaded, or defeated."[22]
The competitive bid requirements in Chapter 125, Florida Statues, ensure that the public's interest is protected when a county disposes of its property. As a statute enacted to protect the public's interest, section 125.35, Florida Statutes, should be broadly construed to effectuate the purpose of the law and any exemption narrowly applied.[23] In light of the protections afforded by the competitive bid statutes, I am unable to read the exemption in section 125.39, Florida Statutes, so broadly that it would apply to an inoperative reverter clause.
Accordingly, where the federal government consents to the sale of the county airport and waives the operation of the reverter clause, it is my opinion that the county must comply with the competitive bid requirements in section 125.35, Florida Statutes, in the sale of such property.
Sincerely,
 Pam Bondi Attorney General
PB/tals
[1] Section 332.01(1), Fla. Stat., defines "[m]unicipality" to include "any county, city, village, or town of this state" for purposes of Ch. 332, Fla. Stat.; clearly, therefore, the provisions in section 332.08, Fla. Stat., would apply to an airport owned by a county.
[2] See s. 332.08(3), Fla. Stat.
[3] Id.
[4] Section 125.01(3), Fla. Stat., recognizes the general authority of a county to purchase, lease, sell, or exchange real or personal property; s. 125.35, Fla. Stat., sets forth a more detailed procedure for counties to sell and convey property by competitive bid; and s. 125.39, Fla. Stat., recognizes that the provisions in Ch. 125, Fla. Stat., do not cover the sale or disposition of land conveyed to a county for a specific purpose and containing a reversionary clause whereby such land reverts to the grantor upon failure to use the land for such purpose.
[5] See Title to SB 1534, Ch. 99-190, Laws of Fla., stating that it is an act relating to local government "clarifying that counties are authorized to negotiate leases with airport and seaport facilities."
[6] See SB 1534, 1999 Regular Session, enacted as Ch. 99-190, Laws of Fla.
[7] See, e.g., Ops. Att'y Gen. Fla. 82-80 (1982) (Attorney General is not free to add words to a statute to support a conclusion that the plain wording of the statute does not supply); 94-09 (1994); 87-43 (1987); 86-32 (1986); and 82-20 (1982).And see Chaffee v. Miami Transfer Company, Inc.,288 So. 2d 209 (Fla. 1974) (Attorney General's Office has no authority to supply additional words to or modify the meaning of a duly enacted statute).
[8] See McKendry v. State, 641 So. 2d 45 (Fla. 1994) (specific statute covering a particular subject area will control over a statute covering the same and other subjects in more general terms); Rowe v. Pinellas Sports Authority,461 So. 2d 72 (Fla. 1984) (when a special act and a general law conflict, the special act will prevail).
[9] See Alsop v. Pierce, 19 So. 2d 799, 805-806 (Fla. 1944);Dobbs v. Sea Isle Hotel, 56 So. 2d 341, 342 (Fla. 1952);Thayer v. State, 335 So. 2d 815, 817 (Fla. 1976) (legislative direction constitutes an implicit prohibition against its being done in any other manner).
[10] See s. 8, Ch. 22846, General Laws of Fla. (1945), creating s. 332.08, Fla. Stat., and ss. 1 and 5, Ch. 23829, General Laws of Fla. (1947), respectively creating ss. 125.35 and 125.39, Fla. Stat. See also
n. 4, supra.
[11] See State ex rel. Quigley v. Quigley,463 So. 2d 224 (Fla. 1985); State v. J.R.M.,388 So. 2d 1227 (Fla. 1980). Cf. Kligfeld v. Office of FinancialRegulation, 876 So. 2d 36, 38 (Fla. 4th DCA 2004); Flo-Sun,Inc. v. Kirk, 783 So. 2d 1029 (Fla. 2001); State v.Digman, 294 So. 2d 325 (Fla. 1974), providing that implied repeals are disfavored and will not be upheld in cases of doubt.
[12] See s. 125.35, Fla. Stat.
[13] Section 125.35(1)(b), Fla. Stat.
[14] See ss. 1 and 5, Ch. 23829, Gen. Laws of Fla. (1947), respectively creating ss. 125.35 and 125.39, Fla. Stat.
[15] Section 5, Ch. 23829, Gen. Laws of Fla. (1947), states:
 "The provisions of the Act shall not be construed to cover the sale or disposition of those lands acquired by any County for delinquent taxes and which are described in the book designated `County Lands Acquired for Delinquent Taxes', on file in the office of the Clerk of the Circuit Court of any County, or any land conveyed to any County for a specific purpose and containing a reversionary clause whereby said land shall revert to the grantor or grantors upon failure to use said real property for such purpose."
[16] Subsequently renumbered as s. 197.592, Fla. Stat., by s. 197, Ch. 85-342, Laws of Fla.
[17] Section 29, Ch. 73-332, Laws of Fla., deletes the provisions relating to lands acquired by any county for delinquent taxes from section 125.39; s. 23, Ch. 73-332, Laws of Fla., was amended to address the method and procedure to be used for the sale of lands acquired by any county for delinquent taxes.
[18] Rolling Oaks Homeowner's Association, Inc. v. DadeCounty, 492 So. 2d 686 (Fla. 3d DCA 1986).
[19] Id. at 690.
[20] Chapter 23829, Gen. Laws of Fla. (1947).
[21] 138 So. 721, (Fla. 1931).
[22] Id at 724. See also Department of Transportation v.Groves-Watkins Constructors, 530 So. 2d 912, 913 (Fla. 1988), stating:
 "Although not required by common law, competitive bidding has been statutorily mandated for the protection of the public. In addition to providing a means by which goods or services required by public authorities may be acquired at the lowest possible cost, Hotel China Glassware Co. v. Board of Public Instruction, 130 So. 2d 78, 81 (Fla. 1st DCA 1961), the system of competitive bidding protects against collusion, favoritism, and fraud in the award of public contracts. Liberty County [v. Baxter's Asphalt Concrete, Inc., 421 So. 2d 505 (Fla. 1982]; Wester v. Belote, 103 Fla. 976, 981-82, 138 So. 721, 723-24 (1931)."
[23] Cf. Sarasota Citizens for Responsible Government, et al.,v. City of Sarasota, 48 So. 3d 755, 762 (Fla. 2010) (Sunshine Law, enacted in the public interest to protect public from "closed door" politics, must be broadly construed to effect its remedial and protective purpose); and Florida Farm Bureau Casualty InsuranceCo. v. Cox, 943 So. 2d 823, 835 (Fla. 1st DCA 2006) (statutes governing insurance contracts to be construed to protect the public,citing Praetorians v. Fisher, 89 So. 2d 329, 333 (Fla. 1956), stating that statutes governing insurance contracts be liberally construed to protect the public).