QUESTION:
Does s. 241.471, F. S., require the Department of Banking and Finance to ascertain, prior to paying moneys held in the State Treasury for distribution to the counties to Shands Teaching Hospital, whether the counties or one of their duly authorized officials, agencies, or employees has transferred indigent residents to the hospital or utilized the hospital facilities to care for their indigent residents without referral approval through normal hospital admission procedures?
SUMMARY:
Pursuant to s. 241.471(3), F. S., a county is not liable to Shands Teaching Hospital for the costs of providing care and treatment of its resident indigents unless it properly authorizes such hospital services or refers or transfers county indigents to the hospital. Liability under s. 241.471(3) can occur only when such transfer or utilization is effectuated with referral approval through normal hospital admission procedures.
From information furnished this office by some of the involved counties and from correspondence from such counties to the department, a composite of the material factual allegations and contentions of the several involved counties suggests that the indigent patients whose hospital bills are the subject of this inquiry were not referred to or transferred to the Shands Teaching Hospital by the board of county commissioners or by any authorized county agency or employee such as a county health department or a county social services or welfare agency. Neither the county nor any of its authorized agencies, officials, or employees authorized Shands Teaching Hospital to provide care and treatment to the involved indigent patients. Neither the board of county commissioners of the respective involved counties nor any authorized county agency, official, or employee thereof has made any determination of county residency or of indigency of the patients involved.
Two of the indigent patients were referred by physicians in the private practice of medicine. These two patients may have been referred by private physicians on the staff of the county hospital, which is an independent public corporation and not under the control of the board of county commissioners, and may have been transported to Shands Teaching Hospital by the county ambulance service, which is directly operated and controlled by the county hospital and is independent of and not under the control of the board of county commissioners. One indigent patient was admitted to Shands Teaching Hospital by one of its staff physicians following contact by a public health nurse in the county health department (a cooperative county/state agency or entity under Ch. 154, F. S., serving a dual county/state purpose under the supervision of the Department of Health and Rehabilitiative Services) inquiring as to examination and observation of the patient at the hospital's diabetic clinic on an outpatient basis at no charge. No referral to the hospital or medical treatment has been made or authorized by such county health department.
It is in the context of the above-stated factual circumstances, which for the purposes of this opinion are assumed to be correct, that I now consider the above-stated question.
The statute in question is presumptively valid and must be given effect until it is judicially declared invalid or inoperative. State ex rel. Gillespie v. Thursby, 139 So. 372 (Fla. 1932); White v. Crandon, 156 So. 303 (Fla. 1934); Evans v. Hillsborough Co.,186 So. 193 (Fla. 1938). Accordingly, no opinion is expressed as to the constitutionality vel non of s. 241.471(3), F. S. Section 241.471(2), F. S., declares as state policy that the hospital operations of the medical center at the University of Florida are to be financed from patient fees and payments from charity, welfare, and county agencies referring part-pay and nonpay patients to the medical center, so that the hospital will be as nearly self-sustaining as possible. Section 241.471(3) provides:
 Each county transferring indigent patients to the hospital without referral approval through the normal admission procedure shall be liable for all costs incurred by the hospital in providing care and treatment of such patients. Each county utilizing the facilities of the hospital to care for its indigent patients, other than those referrals approved prior to admission, shall budget, set moneys aside, and pay for all services based upon statements rendered by the hospital. If payment is not received within 30 days of billing, the hospital may certify the amount due and unpaid to the Department of Banking and Finance. The Department of Banking and Finance, upon receipt of a nonpayment certification, shall remit payment to the hospital, deduct the amount from any moneys held in the state treasury for distribution to the county failing to make prompt payment, and issue a notice to the county of payments made on its behalf. (Emphasis supplied.)
In the statutorily specified circumstances in which a county is liable for and required to budget and pay for the costs of care and treatment and hospital services provided and rendered to its indigent residents, such duty and liability is found or premised upon `statements rendered by the hospital.' Such statements or claims against the county and the disbursement of county funds for such purposes must be approved or disapproved by the board of county commissioners and preaudited by the clerk of the circuit court as the ex officio county auditor. See generally, State exrel. Allied Engineering Corp. v. Bailey, 190 So. 445 (Fla. 1939); Davis v. Keen, 192 So. 200 (Fla. 1939); AGO's 071-150 and 073-113.Also see State ex rel. Landers v. Wheat, 137 So. 277 (Fla. 1931); Mayes Printing Co. v. Flowers, 154 So.2d 859 (1 D.C.A. Fla., 1963), and s. 129.09, F. S., as to the duties of the clerk acting as the ex officio county auditor, and ss. 129.06 and 129.08, F. S., as to the duties and expenditure responsibilities of the board of county commissioners.
Where such statements and other data or information available to the board of county commissioners or to the clerk as ex officio county auditor do not establish that the county referred or transferred or duly authorized the referral or transfer of indigent residents of the county to the Shands Teaching Hospital or utilized or duly authorized the utilization of the hospital facilities to care for its indigent patients, neither the board of county commissioners nor the clerk, as ex officio county auditor, is lawfully authorized to audit and approve or pay or authorize payment of such statements or claims against the county out of county funds.
Since s. 241.471(3), F. S., imposes liability or an obligation on the counties only for their indigent residents referred or transferred to the Shands Teaching Hospital by the counties, or where the counties utilize the facilities of the hospital to care for their indigent resident patients, the certification and any supportive documentation by the hospital of unpaid statements rendered by it to the counties for the cost of care and treatment of indigent patients of the counties should facially establish that the counties referred or transferred such indigent patients to the hospital or utilized the hospital facilities to care for their indigent patients or they or their duly authorized agencies, officials, or employees duly authorized such referral or transfer or utilization. Such claims or vouchers for payment of public funds, whether state or county, submitted to the paying agency should contain sufficient information for the paying agency or its preauditors or officials and the postauditor to determine whether the requested payment is authorized by law, failing in which the paying agency is justified in turning down the request for payment or requesting clarification or further proof of such claim. Attorney General Opinions 068-12 and 075-299. Since the statute specifies that any payments remitted to the hospital by the department are made on behalf of the county, it would follow thatany payment remitted must be in satisfaction of a lawful claim against the county and an obligation of the county imposed on it by law. (Section 241.471(2)-(3), F. S.)
Moreover, s. 241.471(3), F. S., imposes an obligation on the counties transferring indigent patients or utilizing hospital facilities only when such transfer or utilization occurs `without referral approval through the normal admission procedures.' Rule 6C-10.07, F.A.C., which implements, inter alia, s. 241.471, F. S., provides at subsection (1) that admission of indigent patients at Shands Teaching Hospital shall be controlled by the hospitaldirector. When the account of an indigent patient is found to be uncollectible, the hospital is authorized at subsection (3) of Rule 6C-10.07 to write off such account. The hospital director has the authority and responsibility to operate the hospital and all of its activities and departments subject to policies and procedures issued by the health center, Board of Regents, and governmental boards of the state. Rule 6CL-5.72, F.A.C. Thus, the provisions of s. 241.471 can be asserted by Shands Teaching Hospital against a county only when a county or a duly authorized county agency, official, or employee thereof has transferred patients to, or utilized services of, Shands Teaching Hospital without obtaining referral approval through the normal admission procedures which are controlled by and are the responsibility of the hospital director.
I am advised that the involved counties have refused to authorize payments to Shands for the treatment of indigents because they question the propriety of the transfer and admission of such patients by persons or agencies not authorized by the county to effect the same, as well as the respective patients' status as indigent residents of the involved counties. Compare Rule 6C-10.07(2)(a), F.A.C., establishing guidelines to be used by the hospital for determining indigency. Unless and until it is determined that the county or one of its authorized agents or employees in fact transferred these specific patients without referral approval through normal hospital admission procedures, no county obligation could be found to exist under s. 241.471, F. S.
If you are unable to determine from the face of the nonpayment certification and any supportive documentation presented to you by Shands Teaching Hospital whether a transfer of indigent residents or utilization of the hospital facilities to care for indigent patients by the county or one of its duly authorized officials, agencies, or employees without referral approval through normal hospital admission procedures occurred, you should refuse to pay the amount claimed on the nonpayment certification until you are satisfied that the requirements of s. 241.471, F. S., as outlined in this response have been met.
Prepared by: Sharyn L. Smith Assistant Attorney General